[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10592
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20551-WJZ-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LAMAR EADY, JR.,
DEONDRE BAIN,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(November 6, 2014)

Before WILLIAM PRYOR, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

A jury convicted Deondre Bain and Lamar Eady on one count each of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Mr. Bain appeals six of the district court's evidentiary rulings at trial.  Mr. Eady does not appeal his conviction.  Instead, he challenges the district court's sentencing determination that he was an armed career criminal.  He argues that his prior conviction of felony battery under Fla. Stat. § 784.041(1) should not qualify as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C.§ 924(e).

For the reasons that follow, we affirm.

## I

On June 30, 2013, Detective Derek Rodriguez of the City of Miami Gardens Police Department saw a man holding a long rifle standing next to a car parked on the side of the road.  Detective Rodriguez thought he recognized the man as Henry Carter, a person of interest in a criminal investigation.  In fact, the man was later identified as Lloyd Hulse.  Detective Rodriguez activated his police vehicle lights and ordered Mr. Hulse to drop his weapon.  Mr. Hulse threw the rifle into the car's back seat through an open rear door and raised his hands.

Two other detectives and FBI Special Agent Brett McDaniel accompanied Detective Rodriguez to the car.  Three men were seated inside: Andre Beach in the front driver's seat, Mr. Eady in the front passenger's seat, and Mr. Bain in the back seat.  The officers found three firearms inside the car: a Glock Model 27 .40 caliber

2

handgun lying on the floor of the front passenger seat next to Mr. Eady, a Glock Model 22 .40 caliber handgun under the front passenger seat and partially sticking out the back of the seat next to Mr. Bain; and the AR-15 rifle Mr. Hulse threw in the back seat next to Mr. Bain.

A federal grand jury indicted Mr. Hulse, Mr. Bain, and Mr. Eady each on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Hulse pled guilty, while Mr. Bain and Mr. Eady proceeded to trial. The government presented testimony from the arresting officers, DNA evidence from the firearms, recordings of Mr. Bain's phone calls from jail, and evidence that Mr. Bain and Mr. Eady each had a prior felony conviction involving a firearm. Mr. Bain called one witness, Travonna Shantavia Gosier, who testified that she spent several hours alone with Mr. Bain until moments before the officers found him in the car.

The jury found Mr. Bain guilty, and the district court sentenced him to 111 months in prison. The jury also found Mr. Eady guilty. At sentencing, the district court determined that Mr. Eady was an armed career criminal under the ACCA. The court found Mr. Eady had three prior violent felony convictions: (1) aggravated assault with a firearm; (2) strong arm robbery; and (3) felony battery. Mr. Eady objected to his felony battery conviction being considered a violent felony under the ACCA. After concluding that felony battery was a violent felony,

3

the district court sentenced Mr. Eady to 188 months, the low end of the guideline range for his criminal history category and total offense level.

Both Mr. Bain and Mr. Eady timely appealed.

## II

To prove a defendant is guilty of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), the government must establish beyond a reasonable doubt "(1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affecting interstate commerce." *United States v. Jernigan*, 341 F.3d 1273, 1279 (11th Cir. 2003). Mr. Bain does not challenge the sufficiency of the evidence.

Mr. Bain argues instead that he is entitled to a new trial because the district court erred in six of its evidentiary rulings. Specifically, he asserts that the district court wrongfully (1) admitted evidence that he was previously convicted of a felony involving a firearm; (2) prevented him from asking a detective a question on cross examination under the rule of completeness; (3) allowed the government to ask a burden-shifting question on cross-examination; (4) excluded evidence that Mr. Beach had a prior felony conviction; (5) excluded evidence of Mr. Hulse's guilty plea; and (6) violated his Confrontation Clause rights by admitting DNA evidence without testimony from the crime scene investigator who collected it.

4

We start with Mr. Bain's arguments regarding the district court's nonconstitutional evidentiary rulings before discussing his argument regarding the Confrontation Clause.

**A**

We review a district court's evidentiary rulings for an abuse of discretion. *See United States v. Malol*, 476 F.3d 1283, 1291 (11th Cir. 2007).  But "[e]ven if an abuse of discretion is shown, nonconstitutional evidentiary errors are not grounds for reversal absent a reasonable likelihood that the defendant's substantial rights were affected."  *Id.* (internal quotation marks and citation omitted).  A defendant's substantial rights are not affected "[w]here there is overwhelming evidence of guilt" or where the error had only "a very slight effect."  *Id.* (internal quotation marks and citation omitted).  *See also United States v. Frazier*, 387 F.3d 1244, 1266 n.20 (11th Cir. 2004) (*en banc*) (explaining that erroneous evidentiary rulings are not reversible if they do not have a "substantial influence . . . or leave grave doubt as to whether they affected the outcome of a case" (internal quotation marks and citation omitted)).

First, Mr. Bain challenges the district court's denial of his motion in limine to exclude a prior felony conviction of his that involved a firearm.  In September of 2010, Mr. Bain was convicted in state court of attempted second-degree murder involving the discharge of a firearm.  The government filed a notice of intent to

5

offer evidence of the conviction under Federal Rule of Evidence 404(b) to show that Mr. Bain's possession was knowing and intentional. Mr. Bain moved to exclude the evidence, arguing that his prior crime was not closely related enough to his pending charges to be admissible. The district court denied Mr. Bain's motion. It allowed the government to admit into evidence the fact that Mr. Bain was previously convicted of a felony involving the knowing and intentional possession of a firearm. The jury was not informed, however, that Mr. Bain's conviction was for attempted second-degree murder.

We use a three-part test to determine whether a district court abused its discretion by admitting evidence of a defendant's prior bad acts under Rule 404(b): (1) "the evidence must be relevant to an issue other than the defendant's character"; (2) there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act"; and (3) the evidence must have probative value that is not substantially outweighed by its undue prejudice and meet other Rule 403 requirements. *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc). A logical connection exists between a convicted felon's knowing possession of a firearm at one time and the felon's knowledge that a firearm was present at a later time or that the subsequent possession was not accidental. *See United States v. Jernigan*, 341 F.3d 1273, 1281 (11th Cir. 2003). And the government is permitted to use qualifying Rule 404(b) evidence to show

6

intent when a defendant pleads not guilty and fail to remove intent as an issue. *See United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007).

Here, Mr. Bain put both his intent and knowledge at issue by pleading not guilty and arguing that he did not know that firearms were present in the car. The district court excluded the prejudicial nature of Mr. Bain's attempted second-degree murder conviction and limited the evidence to the fact that Mr. Bain had a prior felony conviction involving the knowing possession of a firearm. And the district court appropriately instructed the jury that it could not consider Mr. Bain's prior conviction to prove that he was guilty of the current crime but only to prove Mr. Bain's state of mind. In sum, the district court did not abuse its discretion in admitting the evidence.

Next, Mr. Bain argues that the district court abused its discretion by sustaining the government's objection when he asked Special Agent McDaniel a question on cross examination. While Mr. Bain was in custody, he made more than one hundred phone calls that were recorded. Portions of Mr. Bain's recorded calls were played for the jury and admitted into evidence. Mr. Bain made statements that he needed to "get another hammer," that he needed to get back his "walk around," and that the police took his "baby, with that green beam on it." Special Agent McDaniel testified at trial that a "hammer" and a "walk around" are

7

slang terms for guns and that one of the guns seized from the car had a laser that shot a green beam.

During cross examination, Mr. Bain asked Special Agent McDaniel whether "in listening to those hundreds of recordings at no point in time did you ever hear Mr. Bain ever make a statement stating that he knew that guns were in the car, correct?" The government objected on the basis of hearsay. Mr. Bain argued that he should be allowed to ask the question under the rule of completeness. The district court sustained the objection.

Mr. Bain does not argue that the government's hearsay objection was improper.[1] He argues only that he should have been able to ask his question under the rule of completeness. The rule of completeness, as codified in the Federal Rules of Evidence, states that "[i]f a party introduces all or part of a . . . recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The rule "permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced." *United States v. Simms*, 385 F.3d 1347, 1359 (11th Cir. 2004).

---

[1] We therefore do not address whether a district court should sustain a hearsay objection to a question asking whether a declarant never made a certain statement.

8

Mr. Bain did not ask to admit into evidence any additional portions of his recorded phone calls and does not argue on appeal that any other part of the recordings was "necessary to qualify, explain, or place into context" what he meant when he spoke about a needing to get a "hammer" or a "walk around" or losing his "baby, with that green beam on it."  Instead, he wanted the jury to know that he did not admit to knowing that guns were in the car.  Although the lack of a statement acknowledging the presence of guns might be relevant to Mr. Bain's guilt, it was not necessary to explain the portions of the phone calls admitted into evidence.

Further, even if the district court's ruling constituted an abuse of discretion, it did not affect Mr. Bain's substantial rights.  Because he never made the statement during a recorded phone call, Mr. Bain was free to argue to the jury that the government offered no evidence that he ever admitted to knowing the guns were in the car.  Thus, we affirm the district court's ruling.

**B**

Next, Mr. Bain appeals the district court's denial of Mr. Eady's request to admit evidence that Mr. Beach had a prior felony conviction involving the knowing and intentional possession of a firearm.  Mr. Bain also appeals the district court's denial of Mr. Eady's request to admit evidence that Mr. Hulse pled guilty to being a convicted felon in possession of a firearm.  Mr. Bain adopted Mr.

9

Eady's arguments and objections on these two issues during the trial.  We review these issues for abuse of discretion.

Mr. Bain's arguments on these two issues lack merit.  Mr. Beach was not a witness for either the government or the defense, and was not charged in the indictment.  Moreover, there was no testimony or evidence that Mr. Beach possessed the firearms in the car.  Nonetheless, Mr. Eady sought to introduce irrelevant evidence about Mr. Beach's prior firearms-related felony conviction.  Given the circumstances, the district court properly ruled the evidence was prohibited character evidence under Rule 404(b) and misleading and confusing to the jury under Rule 403.

Similarly, Mr. Eady wanted to ask Special Agent McDaniel whether Mr. Hulse—a codefendant—had pled guilty.  The district court properly ruled Mr. Eady was soliciting inadmissible hearsay testimony.  Additionally, there was a substantial likelihood that knowledge of Mr. Hulse's guilty plea would confuse and mislead the jury.  *See United States v. Griffin*, 778 F.2d 707, 710 (11th Cir. 1985) ("Due to the extreme and unfair prejudice suffered by defendants . . . courts and prosecutors generally are forbidden from mentioning that a codefendant has either pled guilty or been convicted.").  Thus, the district court did not abuse its discretion by excluding evidence of Mr. Beach's prior conviction or Mr. Hulse's guilty plea.

## C

Next, Mr. Bain argues that the government impermissibly shifted the burden of proof when it asked a defense witness whether anyone could corroborate her testimony.  Ms. Gosier was a former girlfriend of Mr. Bain's.  She testified that she spent several hours with Mr. Bain at her house prior to his arrest.  She then drove him home.  She also testified that she lived with her parents.  On cross examination, the government asked whether "anyone [existed] who can say whether or not [Mr.] Bain was at your house besides you?"  Mr. Bain objected.  The district court overruled his objection.  Ms. Gosier then testified that no one else could confirm that Mr. Bain was at her house.

Where a defendant objects to the government's cross examination questions on the basis of improper burden shifting, we review the claim *de novo*.  *See United States v. Schmitz*, 643 F.3d 1247, 1266-67 (11th Cir. 1998).  Prosecutorial misconduct occurs when the government's remarks are improper, and those remarks prejudicially affect the defendant's substantial rights.  *See United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998).

Under the first prong, "a prosecutor may not comment about the absence of witnesses or otherwise attempt to shift the burden of proof . . . ."  *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998).  Under the second prong, prejudice exists when there is a reasonable probability that but for the remarks, the

11

outcome of the trial would be different. *See Wilson*, 149 F.3d at 1301. Importantly, "clear and repeated instructions on the prosecution's burden of proof" will "cure[] any possibility of prejudice." *Schmitz*, 634 F.3d at 1267.

We doubt that the government's question about whether anyone could corroborate that Mr. Bain spent time at Ms. Gosier's house constituted a comment on the absence of witnesses sufficient to improperly shift the burden of proof. But even if it did, it is not reasonable to conclude, based on the evidence admitted, that the outcome of Mr. Bain's trial would be different had the question not been asked. Additionally, the district court properly instructed the jury that Mr. Bain was not required to present any evidence during trial and that the government had the burden of proof. Thus, we find no reversible error.

**D**

Finally, Mr. Bain appeals the district court's denial of his objection regarding testimony about DNA results. The facts relevant to this claim are as follows. Special Agent McDaniel testified that he was present when another FBI agent took DNA samples from Mr. Bain and Mr. Eady. He saw the other agent place the samples in a secure evidence envelope. Detective Rodriguez testified that he directed a crime scene investigator to take DNA samples of the Glock Model 22 .40 caliber handgun and Glock Model 27 .40 caliber handgun found in the car when Mr. Bain and Mr. Eady were arrested. The crime scene investigator

apparently prepared property receipts for the DNA evidence.  But the crime scene investigator was not called to testify, and the property receipts were not admitted into evidence.  Later the government called Toby Wolson, a criminalist supervisor in the Miami Dade Police Department Crime Laboratory.  Mr. Wolson was qualified without objection as an expert in DNA analysis and comparison.  He testified that the DNA samples arrived with property receipts that identified the origin of the sample and the people who handled the items from their creation to their delivery to him.  The property receipts indicated that two of the swabs were from the Glock Model 22 .40 caliber handgun and Glock Model 27 .40 caliber handgun found in the car.  Other swabs were from Mr. Eady and Mr. Bain.

Mr. Bain objected several times that Mr. Wolson's testimony regarding the DNA swabs from the two guns was hearsay and based on a lack of a proper chain of custody.  Mr. Bain never mentioned the Confrontation Clause.  The government argued that any defects in the chain of custody went to the weight of the evidence, not its admissibility.

The district court overruled Mr. Bain's objections and allowed Mr. Wolson's testimony.  Mr. Wolson testified that Mr. Bain's DNA could not be excluded as having contributed to the samples from the two guns, there was a 25% probability that Mr. Bain contributed to the DNA on the Glock Model 27 .40 caliber handgun,

and there was a 20% probability that Mr. Bain contributed to the DNA sample from the Glock Model 22 .40 caliber handgun.

Mr. Bain argues that the district court erred when it allowed Mr. Wolson to testify without calling the crime scene investigator who collected the DNA samples, and without admitting into evidence the written property receipts.  He argues that Mr. Wolson's testimony regarding the property receipts was hearsay and was not supported by a proper predicate or a chain of custody.  As support, Mr. Bain cites cases involving the Confrontation Clause.[2]

We review preserved Confrontation Clause errors *de novo*.  *See United States v. Curbelo*, 726 F.3d 1260, 1271-72 (11th Cir. 2013).  If, however, defense counsel made only a hearsay objection and failed to make a timely Confrontation Clause objection, we review for only plain error.  *See United States v. Baker*, 432 F.3d 1189, 1207 & n.12 (11th Cir. 2005).  "Under plain error review, we cannot correct an error that was not raised at trial unless: (1) there was error; (2) that was plain; (3) that affected the defendant's substantial rights; and (4) we determine that

---

[2] It is not entirely clear whether Mr. Bain is asserting a Confrontation Clause violation on appeal or simply citing cases involving the Confrontation Clause to make his argument about hearsay and a lack of a chain of custody.  But Mr. Bain does not make any substantial argument on hearsay grounds, so we consider it abandoned.  To the extent Mr. Bain raises an objection regarding the chain of custody, "gaps in the chain of custody affect only the weight of the evidence and not its admissibility." *United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990).

it that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Charles*, 722 F.3d 1319, 1322 (11th Cir. 2013).

To the extent Mr. Bain asserts a violation of the Confrontation Clause because the crime scene investigator did not testify, the government is not required to produce every witness "who laid hands on the evidence." *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009) ("[W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case . . . ."). Unlike the cases Mr. Bain cites, the government here made the person who tested the DNA available for cross examination.

Insofar as Mr. Bain argues that the Confrontation Clause required the government to admit into evidence written property receipts establishing the chain of custody, he is wrong. The Confrontation Clause assures defendants the right to test evidence through cross examination. *See Crawford v. Washington*, 541 U.S. 36, 61 (2004) (requiring that reliability be "tested in the crucible of cross-examination"). The Confrontation Clause does not require the government to introduce documentary evidence.

Finally, even if the admission of Mr. Wolson's testimony was a constitutional error, it did not affect Mr. Bain's substantial rights. The testimony

15

revealed a 20-25% probability that Mr. Bain contributed to the DNA found on the two Glock handguns. This evidence had a minor effect, if any, given that the jury heard recorded phone calls in which Mr. Bain talked about needing more guns and that the police took his "baby" away. Thus, Mr. Bain is not entitled to reversal.

## III

Mr. Eady appeals the district court's determination that he was an armed career criminal under the ACCA. Specifically, he objects to the district court's ruling that his conviction for felony battery under Fla. Stat. § 784.041(1) is a qualifying felony under the ACCA.

We review *de novo* a district court's determination that a conviction qualifies as a violent felony under the ACCA. *See United States v. Canty*, 570 F.3d 1251, 1254 (11th Cir. 2009). The ACCA provides that a defendant convicted of being a felon in possession of a firearm, and who has three prior convictions "for a violent felony," is subject to a mandatory minimum sentence of at least 15 years. *See* 18 U.S.C. § 924(e). A "violent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year," which also (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; or (2) "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of

16

physical injury to another." *Id.* § 924(e)(2)(B).  These two prongs are known as the elements and residual clauses.

The United States Supreme Court has defined "physical force" under the elements clause as "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).  In *Johnson*, the Court held that simple felony battery under Fla. Stat. § 784.03 is not a violent felony under the ACCA.  *Id.* at 1271-72.  Because a violation of § 784.03 can be proven in multiple ways, and the lessor of the violations involves "only the slightest unwanted physical touch," simple battery is not a violent felony under the ACCA, provided the government cannot show through *Shepard*-approved documents that the defendant's conviction was based on more violent acts.  *Id.* at 1269.

Mr. Eady asks us to rule the same for felony battery under § 784.041(1).  We decline to do so.  Although simple felony battery does not require actual harm to the victim, felony battery under § 784.041 does.  The latter statute requires that the offender (1) "[a]ctually and intentionally touch[] or strike[] another person"; *and* (2) "cause[] great bodily harm, permanent disability, or permanent disfigurement." Fla. Stat. § 784.041(1) (emphasis added).  Thus, unlike convictions for simple felony battery where no injury is required, convictions under § 784.041 require significant bodily harm, disability, or disfigurement.  It is incorrect to say that a

17

person can "actually and intentionally" hit another person *and* cause "great bodily harm, permanent disability, or permanent disfigurement" without using "force capable of causing physical pain or injury."[3]

Even if § 784.041(1) does not meet the requirements of the elements clause, it certainly meets the requirements of the residual clause.  *See* 18 U.S.C. § 924(e)(2)(B)(ii) (requiring "conduct that presents a serious potential risk of physical injury to another").  *See also Begay v. United States*, 553 U.S. 137, 144-45 (2008) (holding that crimes must include "purposeful, violent, and aggressive conduct" to constitute violent felonies under the ACCA).  Felony battery under § 784.041(1) requires not just a "potential risk" of physical injury, but also that the physical injury actually occur.  And an intentional battery that causes "great bodily harm, permanent disability, or permanent disfigurement" will ordinarily be committed by conduct that is purposeful, violent, and aggressive.  *See United States v. Alexander*, 609 F.3d 1250, 1254 (11th Cir. 2010) (explaining that under the residual clause, we evaluate how the crime is "ordinarily committed").

Mr. Eady, however, asks us to consider that, although he pled guilty to felony battery under Fla. Stat. § 784.041(1), he was initially charged with a lewd and lascivious offense against a minor under Fla. Stat. § 800.04(4), an offense that

---

[3] Mr. Eady's argument that § 784.041(1)—unlike aggravated felony battery under § 784.075—lacks an intent to cause great bodily harm is unavailing.  The elements clause requires only that the physical force be "capable of causing physical pain or injury to another person," not that the use of such force be coupled with an intention to injure.

is not a violent felony under the ACCA. *See United States v. Harris*, 608 F.3d 1222, 1233 (11th Cir. 2010).    Unfortunately for Mr. Eady, we cannot do so. First, we do not look at the crime for which a defendant was initially charged. Second, nor do we look at any other *Shepard*-approved documents. "[S]entencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." *Descamps v. United States*, 133 S. Ct. 2276, 2282 (2013). Because felony battery under § 784.041 has a single, indivisible set of elements, we apply only the categorical approach discussed above.

For the above reasons, felony battery under Florida Statutes § 784.041(1) is a qualifying violent felony under the ACCA. We affirm the district court's ruling.

## IV

The conviction of Mr. Bain and the sentence of Mr. Eady are affirmed.

**AFFIRMED**.

19