NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0195
Aqontise Glenn
v.
The State

On Appeal from the Superior Court of DeKalb County
No. 23CR3769-5

Decided: June 16, 2026

WARREN, Presiding Justice.

Aqontise Glenn was convicted of malice murder and other crimes in connection with the drive-by shooting death of Christopher Copeland.[1]  On appeal, Glenn contends that the evidence

---

[1] Copeland was shot and killed on September 8, 2021.  In November 2023, a DeKalb County grand jury indicted Glenn for malice murder, felony murder predicated on aggravated assault, aggravated assault, possession of a firearm during the commission of a felony, and fleeing or attempting to elude a police officer.  At a jury trial held from January 16 to 22, 2024, a jury found Glenn guilty on all counts.  The trial court sentenced Glenn to serve life in prison for malice murder, a consecutive five years for possessing a firearm during the commission of a felony, and another consecutive five years for fleeing or attempting to elude a police officer.  The aggravated assault count merged with the malice murder count for sentencing purposes, and although the trial court purported to merge the felony murder count with the malice murder count, it was actually vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 372 (1993).  Glenn timely filed a motion for new trial on January 23, 2024, which he amended on January 19, 2025.  On March 28, 2025, the trial court denied the motion.  On April 7, 2025, Glenn filed a timely notice of appeal

was not sufficient to sustain his convictions as a matter of constitutional due process or Georgia statutory law, and that the trial court abused its discretion by excluding certain evidence as hearsay, resulting in an unfairly restricted cross-examination of the lead investigator. Each claim fails, so we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. At 1:52 p.m. on September 8, 2021, surveillance video showed Copeland arriving at and driving towards the back of an apartment complex. Shortly thereafter, at 1:57 p.m., a black Nissan—driven by a man wearing a white shirt—arrived at the complex and headed in the same direction as Copeland. At 2:07 p.m., surveillance video showed the black Nissan speeding back through the complex, exiting at 2:08 p.m., at which point someone at the complex called 911 to report a shooting.

An officer arrived at the scene and observed a deceased man, later identified as Copeland, with multiple gunshot wounds.[2] After speaking with witnesses at the scene, the officer "underst[ood]" that Copeland had been shot from a black Nissan, "possibly" a Nissan Sentra, that was no longer at the scene and was occupied either by one man who was wearing a white shirt or by two to three men who were wearing all black. After reviewing footage from a license-plate reader near the entrance of the complex, law enforcement confirmed that the black Nissan was a Nis-

---

to the Court of Appeals, which transferred his appeal to this Court on September 8, 2025. His appeal was then docketed to this Court's term beginning in December 2025 and submitted for a decision on the briefs.

[2] Copeland sustained three gunshot wounds, one of which was a fatal shot to his right leg.

san Versa with Florida tag number "QTKV52." A "be on the look-out" order was issued for the vehicle.

Around 3:30 p.m., Officer Deandre Brown observed the black Nissan Versa, driven by a man wearing a white shirt, near the apartment complex. Officer Brown attempted to stop the vehicle; the vehicle did not stop; and a "two to three minute" chase, involving several officers, ensued. The chase ended when the vehicle turned onto a dead-end street behind another apartment complex.

Officer Brown testified that upon reaching the end of the street, the driver of the black Nissan Versa, by then shirtless, "park[ed] the car up against the fence, jump[ed] out, [left] the door open, [ran] to the fence[,] and jump[ed] the fence" into the apartment complex. Another officer recovered a cell phone and a pistol magazine—containing several nine-millimeter live rounds—on the ground between the vehicle and the fence.[3]

Deborah Glenn, whose patio faced the fence where the chase ended, was inside her apartment when she heard cars outside. She testified at trial that, upon opening her blinds, she saw her nephew, Aqontise Glenn, fleeing from a black Nissan Versa. After Glenn entered her apartment, Deborah asked him "what [he was] doing [there]" and told him that he needed "to get out." She thought she recalled Glenn pleading with her: "Don't turn me in,

---

[3] Four nine-millimeter cartridge casings were recovered from the scene of the shooting, and a firearm tool-mark analyst testified that three of them had been fired from the same gun. It is unclear from the record whether the firearm tool-mark analyst was able to determine that the fourth cartridge casing was not fired from the same gun, or whether she was not able to reach a definitive conclusion about its origin.

don't turn me in."[4]

Investigator Julian Brim, the lead investigator on the case, ran the Nissan's license plate through the Georgia Crime Information Center and discovered that it was registered to a rental company and was, at that time, being rented by Glenn's wife. After searching the car, officers located Glenn's social security card, identification card, and birth certificate. They were also able to lift fingerprints from the vehicle, two of which matched Glenn.

The cell phone recovered next to the vehicle was programmed with the name "QonsBooty"; its owner was listed as "QON Glenn"; and the primary email associated with the phone contained "aquontiseglenn" in the address. Cell site location data and data from the GPS chip inside the phone were consistent with the phone entering the apartment complex where the shooting occurred at the same time surveillance cameras showed that the black Nissan Versa arrived; being at the crime scene when the shooting occurred; leaving the apartment complex when the black Nissan Versa left; and generally tracking the location of the black Nissan Versa as the chase transpired.[5] Glenn was on the run for several weeks before eventually being apprehended by the US Marshals Service in Alabama on September 24, 2021.

2. Glenn argues that the evidence presented at trial was "wholly circumstantial" and not sufficient as a matter of constitu-

---

[4] During a recorded interview with a detective immediately following the car chase, Deborah said that Glenn made this statement. However, when asked at trial if Glenn said, "Don't turn me in, don't turn me in," she testified, "I think, I'm not sure."

[5] The detective who analyzed the cell phone data testified that the phone data was not exact and that the phone could have been within approximately 60 feet of the identified locations.

tional due process or under OCGA § 24-14-6. Because the evidence was sufficient in both respects, this claim fails.

(a) In evaluating the sufficiency of the evidence as a matter of constitutional due process, we view all of the evidence presented at trial in the light most favorable to the verdicts and consider whether any rational juror could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 US 307, 319 (1979). "We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts." *Moulder v. State*, 317 Ga. 43, 47 (2023) (quotation marks omitted).

Viewed in the light most favorable to the verdicts, the evidence discussed above was sufficient as a matter of constitutional due process to support Glenn's convictions for malice murder, possession of a firearm during the commission of a felony, and fleeing or attempting to elude a police officer. See OCGA §§ 16-5-1(a) (malice murder); 16-11-106(b) (possession of a firearm during the commission of a felony); 40-6-395(B)(5)(A) (2021) (fleeing or attempting to elude a police officer). Surveillance video showed that a man wearing a white shirt drove a black Nissan Versa into the apartment complex where the shooting occurred shortly after Copeland drove in; drove towards the back of the complex where Copeland was getting out of his car; and sped quickly out of the apartment complex immediately following the shooting. While surveillance video did not capture the shooting, witnesses reported that the shooter was wearing a white shirt and driving a black Nissan, and Glenn's cell phone location data was consistent with being at the crime scene when the shooting occurred. And although at least one witness indicated that the vehicle from which shots were fired was "possibly" a Nissan Sentra—rather

5

than a Versa—occupied by several men wearing black—as opposed to just one man wearing white—the jury was entitled to discredit this description, particularly in light of the surveillance video. Glenn was observed shortly after the shooting wearing a white shirt and in the same black Nissan Versa, and when law enforcement attempted to conduct a stop, Glenn sped away and led the police on a chase. See *McClain v. State*, 303 Ga. 6, 9 (2018) (acknowledging that "the jury could have considered [flight] as an act reflecting consciousness of guilt"). After the chase concluded, Glenn fled from the vehicle before breaking into his aunt's apartment and asking her not to turn him in. Additionally, a magazine with several nine-millimeter live rounds was recovered where Glenn abandoned the car after the police chase. Three nine-millimeter cartridge casings that were fired from the same gun were recovered at the crime scene, and Copeland sustained three gunshot wounds. This evidence, albeit circumstantial, was sufficient as a matter of constitutional due process. See *Moss v. State*, 323 Ga. 143, 146 (2025) ("[C]ircumstantial evidence alone can be constitutionally sufficient, and the circumstantial evidence in this case met that standard." (cleaned up)).

(b) "To warrant a conviction on circumstantial evidence," Georgia law requires that "the proved facts … not only be consistent with the hypothesis of guilt, but … exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. "Whether a hypothesis is reasonable or not is for the jury to decide." *Moulder*, 317 Ga. at 47 (quotation marks omitted). And like our constitutional sufficiency analysis above, we view all of the evidence presented at trial in the light most favorable to the verdicts. *Montgomery v. State*, 323 Ga. 188, 190–91 (2025).

Viewed in this light, the evidence presented at trial was

6

also sufficient under OCGA § 24-14-6. Glenn appears to assert two alternative hypotheses: that the shooting was committed by two or three men driving a black Nissan Sentra, rather than a black Nissan Versa, based on some of the witness statements to law enforcement; or that the shooting was committed by the driver of the black Nissan Versa that Glenn later occupied, but that Glenn was not driving the vehicle at the time of the shooting. Given the evidence recounted above—specifically, surveillance video showing a black Nissan Versa driven by a man wearing a white shirt, as Glenn was later found, that arrived at the complex shortly before the shooting and sped away immediately afterwards, and Glenn's cell phone's location being consistent with his presence at the crime scene when the shooting occurred—the jury was authorized to reject these hypotheses as unreasonable. See *Wilson v. State*, 319 Ga. 550, 553 (2024) (affirming, in an OCGA § 24-14-6 challenge, the jury's rejection of appellant's alternate hypotheses that his vehicle was not involved in the shooting or that someone else was driving the vehicle at the time when, among other things, evidence placed the vehicle and appellant near the crime scene shortly before the shooting occurred, appellant was seen driving a car matching the vehicle's description later that day, and appellant owned a firearm that used the type of round matching a shell casing found at the crime scene). Accordingly, Glenn's sufficiency claims fail.

3. Glenn asserts that the trial court abused its discretion in excluding as hearsay certain testimony he sought to elicit from Investigator Brim and that, as a result, the trial court unfairly limited his cross-examination of Investigator Brim. Seeing no abuse of discretion, we conclude that this claim fails.

Hours after the shooting, Investigator Brim authored a re-

7

port that detailed the following. Investigator Brim had been informed by another detective, who had been informed by an ATF agent, who had been informed by a Confidential Informant ("CI"), that the CI received a call from an individual who lived in the apartment complex where the shooting occurred. The individual told the CI that he had "just killed someone[.]" When Glenn sought to question Investigator Brim on the contents of this report at trial, the State made a hearsay objection. At a lengthy bench conference, Glenn's counsel represented that he wanted to question Investigator Brim about the report because it would lead "to the possibility of an additional suspect outside of [Glenn]." The trial court allowed Glenn's counsel to refresh Investigator Brim's recollection with the report, but advised that if the report did not refresh the Investigator's recollection, counsel could not elicit testimony about the substance of the report because it would be hearsay. Counsel objected, stating that information the Investigator learned during the course of his investigation was not hearsay, and then asked Investigator Brim: "Did you receive any information during your investigation as it relates to other potential suspects in this case?" Investigator Brim responded, "I did not." As counsel began to ask a follow-up question about the contents of the report, the State lodged a hearsay objection, to which the trial court responded: "I'm going to sustain that objection. You asked him the question. He said he did not. Now I'm not going to allow you to go into the contents, based on my instructions."

We review a trial court's evidentiary rulings for an abuse of discretion. See *Anglin v. State*, 302 Ga. 333, 335 (2017). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801(c). Subject to certain statutory exceptions, see OCGA § 24-8-803, "[h]earsay

8

shall not be admissible" at trial, OCGA § 24-8-802. See also OCGA § 24-8-805 ("Hearsay included within hearsay shall not be excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule."). It follows that absent a statutory exception, testimony from an investigating officer as to what others told him during the course of his investigation may be excluded as inadmissible hearsay if such testimony is offered to prove the truth of the matter asserted. See *Anglin*, 302 Ga. at 340 (acknowledging that officer's testimony about a security video was hearsay where it "was not based on his personal knowledge, but based on what a different officer, who reviewed the video, told him"); *Jackson v. State*, 301 Ga. 866, 870 (2017) ("[A]n investigating officer may not testify about what others told him during his investigation merely under the guise of explaining the officer's conduct." (quotation marks omitted)).

The trial court did not abuse its discretion when it excluded as hearsay the testimony Glenn sought to elicit about the substance of Investigator Brim's report. As an initial matter, Glenn's counsel was permitted to refresh the Investigator's recollection with the report and ask him whether he received any information regarding other suspects in the case. Hearsay issues arose, however, after the Investigator said he "did not" receive such information and Glenn's counsel attempted to elicit testimony about the contents of the report, which contained multiple layers of hearsay. The Investigator's report consisted of an out-of-court statement that was made by a non-testifying witness to a CI and was relayed, at a minimum, by the CI to an ATF agent, and then by the ATF agent to the testifying witness, Investigator Brim. And the record indicates that the testimony Glenn sought to elicit was being offered to prove the truth of the matter asserted—that there was another person who lived near the crime scene and had confessed to committing a murder around the time that Copeland

9

was killed.

Glenn has never asserted—at trial or on appeal—that this testimony was offered for a non-hearsay purpose, nor has he asserted that it falls within a statutory exception to the general prohibition against hearsay. Instead, he asserts—without supporting authority—that this testimony would not have been hearsay at all, as "[t]he collective knowledge of police investigations, including potential suspects, is not hearsay." But this Court's precedent has explained that testimony from one police officer—repeating what another officer told him about an investigation outside of court—may be excluded as hearsay. See *Anglin*, 302 Ga. at 340; *Jackson*, 301 Ga. at 870. Because the trial court did not abuse its discretion in excluding this testimony as hearsay, this claim fails.[6]

---

[6] Glenn also seems to assert that his rights under the Confrontation Clause contained in the Sixth Amendment to the United States Constitution were violated by the exclusion of this testimony. Because he raises this claim for the first time on appeal, we review it for plain error only. See *Upshaw v. State*, 323 Ga. 257, 272 (2026). To establish plain error, Glenn must demonstrate, among other things, that the alleged error "was clear or obvious, rather than subject to reasonable dispute." *Pugh v. State*, 318 Ga. 706, 717 (2024). Glenn has failed to carry that burden here. The Confrontation Clause guarantees the right of the accused "to be confronted with the witnesses against him." US Const. Amend. VI.

Reading Glenn's argument generously, he seems to claim that the trial court's exclusion of the hearsay evidence and corresponding restriction on his cross-examination of Investigator Brim denied him a "meaningful opportunity to present a complete defense." See *Crane v. Kentucky*, 476 US 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (cleaned up)). Coexisting with Glenn's right to a "meaningful opportunity to present a complete defense," id.,

*Judgment affirmed. All the Justices concur.*

---

is the principle that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," *United States v. Scheffer*, 523 US 303, 308 (1998) (quotation marks omitted). See also *Benson v. State*, ___ Ga. ___ (2026), S26A0425, slip op. at 20 (Ga. May 19, 2026). "Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *Scheffer*, 523 US at 308 (quotation marks omitted). "Only rarely" has the Supreme Court "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 US 505, 509 (2013) (collecting four cases). Considering the above and applying plain error review, Glenn has not met his burden of showing that the application of Georgia's rule against hearsay to Investigator Brim's testimony clearly and obviously violated his rights under the Sixth Amendment.