300 Ga. 807
FINAL COPY

S16A1619.  HUFF v. THE STATE.

BOGGS, Justice.

Appellant Shaheed Kaba Huff was convicted of malice murder, aggravated assault, and possession of a firearm during the commission of a felony in connection with the shooting death of Graham Sisk.[1] The trial court denied Huff's motion for new trial, and he appeals, asserting insufficiency of the evidence, errors in the trial court's charge to the jury, and ineffective assistance of trial counsel. For the reasons that follow, we affirm.

---

[1] The crimes occurred on October 5, 2012. On April 17, 2013, a DeKalb County grand jury indicted Huff on charges of malice murder, felony murder predicated on aggravated assault, two counts of aggravated assault, possession of a firearm during the commission of a felony, trafficking in cocaine, and possession of marijuana with intent to distribute. The drug charges were severed from the remaining counts; appellant later entered a negotiated plea to possession of cocaine, and the State nol prossed the marijuana charge. Huff was tried before a jury July 29 – August 2, 2013, and found guilty of malice murder, felony murder, both counts of aggravated assault, and possession of a firearm during the commission of a felony. He was sentenced to life in prison for malice murder, a consecutive 20-year term for one count of aggravated assault, and a consecutive five-year term of imprisonment for possession of a firearm during the commission of a felony. The remaining convictions either merged or were vacated by operation of law.  See Malcolm v. State, 263 Ga. 369, 372-373 (5) (434 SE2d 479) (1993).  Huff's motion for new trial was filed by new counsel on October 2, 2013, amended on November 12, 2014, and denied on September 23, 2015. His notice of appeal was filed on October 20, 2015. The case was docketed in this Court for the September 2016 term and orally argued on September 12, 2016.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed that Huff asked Turner, Starr, and Haygood to assist him in moving some personal belongings, using a pickup truck and an SUV that he owned. During the move, Huff announced that he "had to make a play," or drug deal, and Turner declared that the drug purchaser would only deal with him. Huff provided a bag of pills to Turner, who drove Huff's pickup truck to a restaurant on Memorial Drive.[2] Huff, driving his SUV with Starr and Haygood as passengers, observed the transaction from across the street. The victim took the pills, ostensibly to count them, and then drove away without paying.

Turner pursued the victim in Huff's truck, followed by Huff driving the SUV. A high-speed chase ensued along city streets at rush hour, seen by numerous eyewitnesses and captured on surveillance video, during which Turner rammed the victim's car, damaging Huff's truck.[3] When the victim's car was stopped behind another vehicle at a traffic signal, Turner got out of the truck and began shouting at the victim and pulling on the car doors so hard that

---

[2] Turner testified that the victim was a regular customer who met him frequently at that location to purchase pills, usually prescription narcotics.

[3] When police eventually located Huff's pickup truck, it had front end damage consistent with having rammed another vehicle.

he broke off the handles. Shortly thereafter, Huff drove his SUV into the oncoming lane around the stopped traffic and into the intersection, blocking the travel lane. Starr testified that Huff told him to take a pistol from the front console and recover the pills, or else Huff would kill him. Witnesses saw Starr and Haygood get out of the SUV and approach the victim's car quickly and "with a purpose"; Starr immediately fired multiple rounds at the victim through the passenger side window, killing him; Starr and Haygood then fled on foot while Turner and Huff drove away. The pills were recovered by police and proved to be over-the-counter allergy medicine.[4]

Huff gave a statement to police in which he said that he asked Turner, Haygood, and Starr to assist him with moving furniture, and that Turner asked to borrow his pickup truck to conduct some business, then drove away with his truck. Huff acknowledged to police, however, that he owned the SUV and was driving it during the incident. At trial, Huff presented testimony from Turner that Turner found approximately 200 pills in a dumpster behind a medical clinic, that "somebody" told him they were "Percocet," and that he decided to sell them to

---

[4] The indictment originally charged Huff, Starr and Turner; Starr pleaded guilty to voluntary manslaughter, while Turner pleaded guilty to aggravated assault approximately six months after the trial concluded. Both men testified at Huff's trial.

the victim. Turner testified that he chose to pursue the victim when he drove away, and that Huff knew nothing about the drug transaction. Huff also presented testimony from Haygood that when Turner left in pursuit of the victim, Huff exclaimed, "He's going to kill someone in my vehicle" and "I got to get my truck." While Haygood testified that Huff instructed him to ask what Turner was doing with his truck and that he told Turner not to move it, Turner testified that "no one said anything" to him while he was at the victim's car.

1. Huff first contends that the evidence was insufficient to support his convictions, because Starr's testimony as an accomplice or party to the crime was the only evidence identifying him as a participant. The record, however, does not support this claim.

Although OCGA § 24-14-8[5] provides that corroboration is required to support a guilty verdict in "felony cases where the only witness is an accomplice," only slight evidence of corroboration is required. See Bradford v. State, 261 Ga. 833, 834 (1) (412 SE2d 534) (1992). "[T]he necessary corroboration may consist entirely of circumstantial evidence, and evidence of

---

[5] Former OCGA § 24-4-8 was carried forward in the new Evidence Code as OCGA § 24-14-8; the new provision is substantially the same as the old, and we have given it the same meaning. See Bradshaw v. State, 296 Ga. 650, 654 (2) (769 SE2d 892) (2015).

the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime." (Citations and punctuation omitted.) Berry v. State, 248 Ga. 430, 432 (1) (283 SE2d 888) (1981) (overruled on other grounds, Hutchins v. State, 284 Ga. 395 (667 SE2d 589) (2008)).

Here, Huff's statement to police as well as the testimony of his own witnesses placed him on the scene. Moreover, both of Huff's witnesses testified that Huff engaged in the pursuit, and that he pulled into the oncoming lane around the line of cars and into the intersection in front of the victim. The testimony of one accomplice may corroborate that of another. Herbert v. State, 288 Ga. 843, 844 (1) (708 SE2d 260) (2011). Eyewitnesses testified that the two men who got out of Huff's SUV did not approach the pickup truck or seem interested in it, but moved directly to the victim's car. And Turner testified that Huff met him afterwards and told him to follow him to a nearby location, where Starr appeared and spoke with Turner, then had a discussion with Huff out of Turner's hearing.

This evidence, which was related to Huff's conduct before, during, and after the crimes and connected Huff to the crimes charged, was sufficient to corroborate Starr's testimony that Huff joined in the pursuit not out of concern

5

for his truck or other motorists' safety, but to recover his drugs from the victim. See id. (appellant's admission that he drove two alleged accomplices to scene, together with their testimony and physical evidence, was sufficient to corroborate accomplice testimony). See also Handley v. State, 289 Ga. 786, 786-787 (1) (716 SE2d 176) (2011) (even in absence of forensic evidence, multiple alleged accomplices may corroborate one another's testimony).The sufficiency of the corroboration was a matter for the jury to determine. Id. There was no violation of OCGA § 24-14-8, and we conclude that the evidence was sufficient to enable a rational trier of fact to find Huff guilty beyond a reasonable doubt of the crimes for which he was convicted.  See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Huff next contends that the trial court erred in failing to instruct the jury that the testimony of an accomplice must be corroborated. OCGA § 24-14-8 provides in its entirety:

> The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

6

Huff having neither requested the instruction nor objected to its omission, we review this enumeration solely for plain error under OCGA § 17-8-58 (b). Sanders v. State, 290 Ga. 637, 640 (2) (723 SE2d 436) (2012). In so doing,

> the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If all three of these questions are answered in the affirmative, the appellate court has the discretion to reverse if the error seriously affects the fairness, integrity, or public reputation of the proceedings below. Satisfying all four prongs of this standard is difficult, as it should be.

(Citations and punctuation omitted.) State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). As noted in Division 1, evidence from multiple witnesses, including Huff's witnesses and Huff himself, corroborated Starr's testimony. Pretermitting whether the failure to instruct the jury on corroboration was error, Huff cannot successfully demonstrate that it was plain error.

Huff's reliance on Stanbury v. State, 299 Ga. 125 (786 SE2d 672) (2016), is misplaced. There, the trial court instructed the jury in the language of Georgia Suggested Pattern Jury Instructions, Vol. II, § 1.31.90, that "the testimony of a single witness, if believed, is generally sufficient to establish a fact." (Punctuation omitted.) Id. at 130 (2). However, the court failed to charge the

relevant language of OCGA § 24-14-8 requiring corroboration of an accomplice.[6] "Under the specific facts of [that] case," id. at 129 (2), we held that the trial court did not merely fail to give a corroboration charge, but in effect expressly authorized the jury to convict on the testimony of the accomplice alone, in direct violation of OCGA § 24-14-8. Under the circumstances of that case, the omission of an accomplice corroboration instruction amounted to plain error. Id. at 130-131 (2).[7]

Here, in contrast, the parties agree that the trial court did *not* charge the jury that the testimony of a single witness is sufficient to prove a fact.[8] Instead, the trial court instructed the jury that it was to consider "the evidence in this case, the testimony of the witnesses and the facts and circumstances of the case" in order to determine whether Huff was a party to the alleged crimes. The trial court also charged on mere presence and parties to a crime, repeating the requirement that the State prove every element of the crime beyond a reasonable doubt. But

---

[6] The notes to the pattern instruction caution that accomplice testimony requires corroboration.

[7] Similar circumstances obtained in Fisher v. State, 299 Ga. 478 (788 SE2d 757) (2016), which follows Stanbury.

[8] While the giving of the pattern instruction on the testimony of a single witness was discussed at the charge conference, the parties agree that it was never given.

this Court need not decide whether the absence of a correct instruction, rather than the presence of an incorrect instruction, is reversible error. Here, given the quantum of evidence, combined with the fact that the instruction was incomplete rather than overtly incorrect, Huff cannot show that the instruction "likely affected the outcome of the proceedings." (Citation and punctuation omitted.) Kelly, supra, 290 Ga. at 33 (2) (a). Accordingly, we find no plain error.

Huff also asserts that the trial court erred in failing to charge the jury that coercion is not a defense to murder. Once again, Huff failed to request such a charge or object to its omission, requiring a plain error analysis. The omission of such an instruction was not plain error, because such a charge would not be adjusted to the facts presented here. Huff does not claim coercion, or that he was forced to participate in the shooting; rather, he argues that Starr's testimony could have been attacked through a legal instruction that Starr's claim of coercion did not relieve him of criminal responsibility for the murder, and further argues that Starr could not reasonably have been coerced under the facts presented at trial. But Huff contended that Starr acted independently and without his knowledge in attacking the victim while Huff was attempting to recover his pickup truck from Turner. A charge on coercion would have had no direct

9

relevance to Huff's defense. Under these circumstances, Huff has failed to show plain error.

3. Huff asserts that the trial court erred in denying his motion for new trial because Starr recanted his trial testimony. We disagree.

> That a material witness for the State, who at the trial gave direct evidence tending strongly to show the defendant's guilt, has since the trial made statements even under oath that his former testimony was false, is not cause for a new trial. Declarations made after the trial are entitled to much less regard than sworn testimony delivered at the trial. The only exception to the rule against setting aside a verdict without proof of a material witness' conviction for perjury, is where there can be no doubt of any kind that the State's witness' testimony [was the] purest fabrication.

(Citations and punctuation omitted.) Norwood v. State, 273 Ga. 352, 352-353 (2) (541 SE2d 373) (2001). Huff acknowledges this rule, and we decline his invitation to disapprove it. Moreover, the trial court expressly found that it "does not find credibility in Starr's recantation." We decline to find an abuse of discretion here.

4. Huff claims that his trial counsel was ineffective in failing to move for a directed verdict on the basis that Starr's testimony was uncorroborated, in failing to request a charge on corroboration or argue lack of corroboration in closing, and in failing to request a charge on coercion or argue it in closing. To

10

prevail on a claim of ineffective assistance, Huff must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. <u>Strickland v. Washington</u>, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Huff must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also <u>Kimmelman v. Morrison</u>, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Huff must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, supra, 466 U. S. at 694 (III) (B). See also <u>Williams v. Taylor</u>, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see <u>Kimmelman</u>, 477 U. S. at 382 (II) (C), and Huff has failed to meet it.

With respect to the issue of corroboration, Huff's trial counsel testified at the hearing on Huff's motion for new trial that his theory of the case was that Huff had no involvement in the drug deal and was simply trying to discover why

Turner pursued the victim in his pickup truck, and that he had no knowledge that Starr was going to shoot the victim. He testified that his defense was aimed at showing that Starr acted on his own, without Huff's knowledge, and that "everything we did was geared towards showing that Mr. Huff had no connection to anything that Mr. Starr did." Since the defense position was that Starr was not an accomplice, trial counsel testified that he did not ask for a charge on corroboration because he did not want to "suggest[ ] in any form or fashion that he was an accomplice," and it would have been "counterintuitive for me to ask the court to charge on that."

"Decisions as to which jury charges will be requested and when they will be requested fall within the realm of trial tactics and strategy. They provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) McLean v. State, 297 Ga. 81, 84 (3) (772 SE2d 685) (2015). Trial counsel articulated a deliberate strategic purpose in not requesting a charge on accomplice testimony. Moreover, even if it were otherwise, Huff has failed to show a reasonable probability that the outcome of the trial would have been different if his lawyer had sought a charge on corroboration or argued it to the

jury. As noted above, testimony from multiple witnesses, including the other participants in the incident, and statements from Huff himself, provided corroboration of Starr's testimony. And while trial counsel acknowledged that it "didn't occur" to him to request a charge on the concept of coercion as it pertained to Starr, we have already noted that such a charge was not adjusted to the evidence and in any event would have been of doubtful relevance to Huff's defense. Given the requirement that our scrutiny of trial counsel's performance "must be highly deferential," State v. Worsley, 293 Ga. 315, 323 (3) (745 SE2d 617) (2013), we cannot conclude that Huff has met his heavy burden of demonstrating ineffective assistance of counsel.

Judgment affirmed. All the Justices concur.

Decided February 6, 2017 – Reconsideration denied March 30, 2017.

Murder. DeKalb Superior Court. Before Judge Flake.

Charles H. Frier, for appellant.

Sherry Boston, District Attorney, Lenny I. Krick, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.