302 Ga. 345
FINAL COPY

S17A1164.  PARKS v. THE STATE.

BENHAM, Justice.

Appellant Lewis Parks a/k/a Harris appeals his convictions related to the death of Lyndon "Pookie" Tucker.[1]  Appellant's sole enumeration of error is that the evidence was insufficient to convict him of the crimes for which the jury returned verdicts of guilty.  For the reasons set forth below, we affirm.

Viewed in a light most favorable to upholding the jury's verdicts, the evidence shows as follows.  At approximately 8:00 in the evening of December 17, 2010, the victim's girlfriend dropped him off at Midtown Towing where the victim worked as a security guard.  Later that night, the victim's girlfriend went to a party hosted by her sister at a club called "The

[1] The crimes occurred on December 18, 2010.  On July 22, 2011, a Fulton County grand jury indicted appellant, along with co-indictee Matthew Doyle, on charges of malice murder, two counts of felony murder, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  Appellant and Doyle were tried jointly from June 11-14, 2013, with the jury returning verdicts of guilty on all charges in the indictment.  On June 24, 2013, the trial court sentenced appellant to life in prison without parole plus a number of years.  Appellant moved for a new trial on June 27, 2013, and filed an amended motion for new trial on October 27, 2015.  On December 17, 2015, the trial court held a hearing on the motion, as amended, and denied the motion on September 30, 2016.  Appellant filed a notice of appeal on October 11, 2016, and, upon receipt of the record, the appeal was docketed to the April 2017 term of this Court and submitted for a decision to be made on the briefs.

Yard," which was about five minutes from the victim's worksite. The party lasted into the early morning hours of December 18. During the party, a fight broke out between two groups of young men. One of the groups fighting included a young man who went by the nickname "Poochie" and who was the cousin of the victim's girlfriend.

Keith Richardson testified at trial. At the time of the events in this case, Richardson said he was addicted to drugs and would sometimes drive appellant to different places in exchange for cash or drugs. On the night in question, Richardson testified appellant called him to ask for a ride purportedly to pick up appellant's son from a club. When Richardson arrived at appellant's house, three men entered Richardson's four-door, blue Ford Explorer. Appellant sat in the passenger seat, co-defendant Doyle sat behind Richardson, and another male, who was allegedly appellant's stepson, sat behind appellant. Appellant directed Richardson to drive to The Yard. When they arrived, the men did not exit Richardson's vehicle. While sitting for about 20 minutes in the parking lot of the club, Richardson overheard appellant and Doyle discussing making someone pay for something.

Eventually, appellant directed Richardson to drive the group to a place Richardson described as a junkyard. At that location, Richardson said Doyle

2

exited the vehicle and then he heard gunshots. At trial, Richardson also stated he did not see anyone with a weapon; however, the lead detective who investigated the killing testified that Richardson told him he saw appellant racking a gun while in the car and that Doyle had a gun when he exited the vehicle. After the first shots were fired, a witness, who lived near Midtown Towing, testified he looked out of his living room window and saw a blue Ford "truck" with a man standing outside the vehicle and another man hanging outside the passenger window making motions with his arms as if he was shooting. Richardson testified he tried to drive away as soon as he heard gunshots, but appellant told him to slow down so that Doyle could get back into the vehicle. Appellant directed Richardson where to drive and eventually Richardson drove the men back to appellant's house.

At Midtown Towing, the victim worked in a small shack, checking cars in and out of the tow yard. One of his co-workers worked inside a nearby building, processing paperwork. On the night in question, the co-worker said she was working when she heard a tapping sound. She stepped outside, found the victim on the ground saying he had been shot, and called 911. The co-worker did not see the shooting and said she did not see anyone else around when she found the wounded victim.

The State introduced cell phone records which placed appellant's cell phone near Midtown Towing around the time the shooting occurred. The cell phone records also showed that the cell phone towers that received the signal from appellant's cell phone were in locations consistent with the route Richardson said he took after leaving the scene of the shooting and taking appellant back to his house.

Kerry Henderson, who was the cousin of appellant's girlfriend, testified at trial. She said that on the night in question, her cousins had borrowed her vehicle to go to the party at The Yard. Later that evening, her cousins contacted her to tell her that her vehicle had been damaged and a friend took her to inspect her vehicle. While inspecting her vehicle, Henderson said she saw appellant riding in the passenger seat of a blue "SUV." Henderson also admitted she had met with a police detective about the shooting, but claimed she could not recall the details of any conversation she had with him. The lead detective testified that Henderson contacted him about the case in April 2011, and that he met with her in person. He said Henderson told him that on the day after the shooting, appellant and Doyle made admissions to her that they had killed the victim as some form of retribution related to the fight that occurred at The Yard. Henderson told the detective that appellant and Doyle

4

had mistakenly believed that the victim was the brother of Poochie, who was one of the young men involved in the fight and who was actually the cousin of the victim's girlfriend.

The medical examiner testified the victim died from approximately eight gunshot wounds. He said the characteristics of the wounds were consistent with being caused by bullets fired from a high velocity weapon. The crime scene investigator collected nine shell casings from the scene. The firearms expert testified that the shell casings, which were 7.62 mm caliber, had been fired from the same firearm which was either an SKS or AK-47 type of rifle. The firearms expert also testified that the bullet recovered from the victim's body during the autopsy was consistent with being fired from either an SKS or AK-47 rifle.

Appellant contends that Richardson was an accomplice to the murder and, as such, argues the evidence was insufficient to convict him because Richardson's testimony was uncorroborated. We will assume for the sake of this appeal that Richardson was an accomplice subject to the rule announced in OCGA § 24-14-8[2] which states in pertinent part:

> The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony

---

[2] Appellant was tried after the effective date of Georgia's new Evidence Code.

cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness….

The evidence necessary to corroborate the testimony of an accomplice "may be circumstantial and slight, and need not be sufficient in and of itself to warrant a conviction, so long as it is independent of the accomplice's testimony and directly connects the defendant to the crime or leads to the inference of guilt." Lewis v. State, 301 Ga. 759, 761 (1) (804 SE2d 82) (2017). See also Huff v. State, 300 Ga. 807 (1) (796 SE2d 688) (2017). The sufficiency of the corroboration is a matter for the jury to decide. See id. at 809.

In this case there was evidence independent of Richardson's testimony connecting appellant to the crime. Cell phone records showed appellant's cell phone was near Midtown Towing around the time the shooting occurred; cell phone records showed appellant's cell phone connected with cell phone towers that were in locations consistent with the route Richardson said he drove after leaving the scene of the shooting; Henderson saw appellant in the passenger seat of a blue "SUV" on the night in question; a witness, who lived near Midtown Towing, heard gunshots and saw a blue Ford "truck" with a

man standing outside and a man hanging out of the passenger window with his arms formed as if shooting; and Henderson reported to police that appellant and Doyle admitted to her that they had killed the victim.[3]

The evidence adduced at trial and summarized above was sufficient as a matter of due process to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted either as a direct participant or as a party to the crimes for which he was charged. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); Terrell v. State, 300 Ga. 81 (1) (793 SE2d 411) (2016).

Judgment affirmed. All the Justices concur.

---

[3] Appellant asserts that Henderson's out-of-court statement to a police detective that the defendants admitted to killing the victim cannot be considered for the purpose of corroborating Richardson's testimony. We disagree. Henderson never denied making this statement to the detective, but, rather, stated that she could not recall what she said to the detective and stated her memory could not be refreshed upon being shown the statement she made. She also stated she could not remember what the defendants told her after the shooting and could not remember telling the detective about the defendants' involvement. Upon testifying she had no recollection of these conversations, the trial court allowed the State to treat Henderson as a hostile witness. The inconsistent statement Henderson made to police is not hearsay inasmuch as Henderson testified at trial and was subject to cross-examination. See OCGA §§ 24-6-613; 24-8-801 (c) and (d); Jackson v. State, 292 Ga. 685 (5) (740 SE2d 609) (2013). Regardless of Henderson's stated inability to recall what she said to the detective, her out-of-court statements were admissible for both impeachment purposes and as substantive evidence. See Brewner v. State, 302 Ga. 6 (V) (804 SE2d 94) (2017); Hood v. State, 299 Ga. 95 (2) (786 SE2d 648) (2016); McNair v. State, 330 Ga. App. 478 (1) (a) (767 SE2d 290) (2014). Accordingly, Henderson's statements to police could be considered for the purpose of corroborating Richardson's testimony.

Decided October 16, 2017.

Murder. Fulton Superior Court. Before Judge LaGrua.

Genevieve Holmes, for appellant.

Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.