303 Ga. 321
FINAL COPY


S17A1903. ROBINSON v. THE STATE.


BOGGS, Justice.

After a jury trial, Ted Debaise Robinson was found guilty of malice

murder, two counts of felony murder, attempted armed robbery, possession of

a firearm during the commission of a felony, and possession of a firearm by a

convicted felon, in connection with the killing of Timothy Lee Buck.[1] His

amended motion for new trial was denied, and he appeals, asserting

insufficiency of the evidence, the trial court's failure to charge on corroboration

---

[1] The crimes occurred on June 25, 2011. On February 10, 2012, a Bartow County grand jury indicted Robinson for malice murder, three counts of felony murder, attempted armed robbery, two counts of burglary, two counts of possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Robinson was tried before a jury from March 25-27, 2013. The trial court directed a verdict on one count of felony murder, two counts of burglary, and one count of possession of a firearm in the commission of a felony. Robinson pled guilty to one count of possession of a firearm by a convicted felon. The jury found Robinson guilty on all remaining counts, and he was sentenced to life imprisonment plus 40 years. Robinson's second amended motion for new trial was denied on February 27, 2017, his notice of appeal was filed on March 3, 2017, and the case was docketed in this Court for the August 2017 term. The case was submitted for decision on the briefs.

of accomplice testimony, and ineffective assistance of trial counsel. For the reasons stated below, we affirm.

Construed to support the verdict, the evidence showed that on the evening of June 20, 2012, Robinson, his next door neighbor and "cousin-in-law" Justin Cody Wise, and their acquaintance Antonio Linley met at Robinson's home, where Robinson lived with his wife and father-in-law. The three agreed on a plan to rob the victim because Linley owed Robinson $300, and Robinson had observed the victim in possession of a large amount of cash. When Wise and Linley first went to the nearby house where the victim was visiting, Robinson told them that "a family matter [was] going on," that a man had alcohol poisoning and 911 had been called. He instructed them to wait until the ambulance drove away. Wise and Linley then approached the house, armed with a baseball bat, but retreated when they realized that they had been seen. Robinson, "furious" because they did not "get the money," then provided Linley with a revolver belonging to his father-in-law. Linley took the bullets out of the revolver and put them in his sock, but Robinson angrily told him to reload the gun, and that Linley "was going to kill the man and get the money." Robinson accompanied Linley and Wise back to the house, where they found the victim

2

asleep in a chair on the front porch. Linley shot the victim in the head, then entered the house in search of cash and valuables, while Wise turned out the victim's pockets. Finding nothing, and disturbed by the presence of other occupants, they fled.

In the morning, the owner of the house approached the victim on the porch, believing that he was still intoxicated, but found him "cold" and called police. Police found blood on the porch, loose change, a cigarette lighter, and the victim's wallet, still containing a large amount of money. The medical examiner testified that the cause of death was a gunshot wound to the head. Meanwhile, Robinson and Wise, concerned because the victim's death had become known, got Linley out of the subdivision by a path through the woods. As they crossed a stream, Wise threw a rifle into the water, and Linley kept the gun used to shoot the victim.

Police talked to witnesses and began trying to locate other individuals who may have been present. Robinson was among those interviewed, and he gave a false name to police. Later, after Robinson was identified by the police as a person who had been at the scene of the murder earlier in the day, he told them that he could "help [them] . . . about the dead guy." After he told police that

3

Linley had his father-in-law's gun, Robinson agreed to participate in a controlled telephone call, and then a meeting to retrieve the gun. Linley produced a .38 revolver; the firearm was registered in the name of Robinson's father-in-law. After police interviewed Linley, they recovered a .22 rifle from Pumpkinvine Creek and a baseball bat from the driveway of Wise's residence.[2]

1. Robinson first contends that the evidence was insufficient because Linley's testimony was not corroborated as a matter of law.

> Although OCGA § 24-14-8 provides that corroboration is required to support a guilty verdict in "felony cases where the only witness is an accomplice," only slight evidence of corroboration is required. The necessary corroboration may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime.

(Citations and punctuation omitted.) Huff v. State, 300 Ga. 807, 809 (1) (796 SE2d 688) (2017). The evidence "need not be sufficient in and of itself to warrant a conviction, so long as it is independent of the accomplice's testimony and directly connects the defendant to the crime or leads to the inference of guilt. The sufficiency of the corroboration is a matter for the jury to decide." (Citations and punctuation omitted.) Parks v. State, 302 Ga. 345, 348 (806 SE2d

---

[2] Linley and Wise pled guilty, and Linley testified at Robinson's trial.

529) (2017).

Here, the State presented ample evidence corroborating Linley's testimony. A witness testified that Robinson, earlier in the day, was present when the victim opened his wallet to reveal a large amount of cash. Robinson acknowledged to police that he was present at that time. Another witness saw Robinson with Wise inside the house on the night of the murder.

After initially giving police a false name, Robinson volunteered to help police "about the dead guy" and recover his father-in-law's gun from Linley, who at that time was unknown to the police. Robinson agreed to "do a controlled phone call" with Linley, and police arranged for Wise's mother to bring a cell phone that Robinson sometimes used to the police station to make the call, because Linley would recognize that number. In his telephone conversation with Linley, which was recorded by police and played for the jury, Robinson made incriminating statements regarding the location of the murder weapon, retrieving it, and "get[ting] the story straight." A controlled recovery of the firearm was then arranged; police first searched Wise's mother's vehicle and then followed it to Linley's grandmother's home, where Robinson retrieved a .38 revolver. The revolver was registered to Robinson's father-in-law, and the

bullet recovered from the victim's body was consistent with the firearm. Telephone records from the cell phone that Robinson used to make the controlled call showed 12 calls with Linley on the day of the shooting. This is ample corroboration of Linley's testimony, and the evidence was sufficient under Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Relying on Stanbury v. State, 299 Ga. 125, 130 (2) (786 SE2d 672) (2016), Robinson contends that the trial court committed plain error when it failed to instruct the jury on corroboration.[3] In conducting a plain error analysis,

> the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If all three of these questions are answered in the affirmative, the appellate court has the discretion to reverse if the error seriously affects the fairness, integrity, or public reputation of the proceedings below. Satisfying all four prongs of this standard is difficult, as it should be.

(Citations and punctuation omitted.) State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

Robinson argues that the trial court omitted the corroboration charge while also instructing the jury that the testimony of a single witness is sufficient to

---

[3] Robinson acknowledges that because he failed to object to the omission of this instruction, this enumeration is reviewed for plain error only. Wilson v. State, 301 Ga. 689, 693 (3) (804 SE2d 54) (2017).

prove a fact. That misleading single-witness instruction amounted to plain error in <u>Stanbury</u>, id. at 131-132 (2), but it was not given here. Robinson argues that the trial court instructed the jury that it "could use Linley's testimony as direct evidence of guilt." As Robinson acknowledges, however, this argument is merely his extrapolation from part of the trial court's general instruction on direct and circumstantial evidence that "[d]irect evidence most commonly comes in the form of witness testimony." This is not, as Robinson contends, the equivalent of the erroneous single-witness charge in <u>Stanbury</u>.

Here, while the trial court omitted the corroboration charge, it did instruct the jury on the presumption of innocence and reasonable doubt, mere suspicion, mere presence, and impeachment and credibility, including that the jury could consider pending prosecutions and negotiated pleas. Moreover, the trial court instructed the jury that it must consider "whether the State has met its burden of proof as to Mr. Robinson, independent of the other defendants." Under these circumstances,

> this Court need not decide whether the absence of a correct instruction, rather than the presence of an incorrect instruction, is reversible error. Here, given the quantum of evidence, combined with the fact that the instruction was incomplete rather than overtly incorrect, [Robinson] cannot show that the instruction likely

7

affected the outcome of the proceedings. Accordingly, we find no plain error.

(Citations and punctuation omitted.) Huff, supra, 300 Ga. at 811 (2).

3. Finally, Robinson asserts ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance, Robinson must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Robinson must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). And to prove that he was prejudiced by the performance of his lawyer, Robinson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 (III) (B). This burden is a heavy one, see Kimmelman v. Morrison, 477 U. S. 365, 382 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986), and Robinson has not met it.

(a) Robinson asserts ineffective assistance of his trial counsel in failing to

8

request an instruction on accomplice corroboration. At the time of Robinson's trial, however, Hall v. State, 241 Ga. 252 (244 SE2d 833) (1978), held that refusal to give a requested charge on accomplice corroboration was not error, so long as some corroborating evidence was presented. Id. at 257 (7).[4] That holding was overruled in Hamm v. State, 294 Ga. 791, 796 (2) (756 SE2d 507) (2014), but

> at the time of [Robinson's] trial, Hamm . . . had not yet been decided, and the controlling precedent was that there is no error in declining to give an instruction on accomplice corroboration, even if such a charge is requested, where the accomplice's testimony is in fact corroborated by independent evidence.

(Citations and punctuation omitted.) Lyman v. State, 301 Ga. 312, 322 (3) (a) (800 SE2d 333) (2017). "[T]here is no general duty on the part of defense counsel to anticipate changes in the law, and only in a rare case would it be ineffective assistance by a trial attorney not to make an objection that would be overruled under prevailing law." (Citations and punctuation omitted.) Id. at 321

---

[4] At the hearing on Robinson's motion for new trial, his trial counsel testified that his theory of the case was that Robinson was not an accomplice, and his defense was to distance himself from Linley and Wise, so an instruction "may have not even been necessary." See generally Manner v. State, 302 Ga. 877, 884 (II) (A) (808 SE2d 681) (2017) (decision to forego charge on corroboration not objectively unreasonable when charge in conflict with defense theory that defendant was not accomplice and uninvolved in crime).

9

(3) (a). Moreover, as noted in Division 1, supra, Linley's testimony was corroborated by multiple sources, and "it is unlikely that the omission of the accomplice corroboration instruction affected the outcome of [Robinson's] trial." Id.

(b) Robinson also asserts ineffective assistance of trial counsel in failing to object to testimony regarding the cell phone records showing 12 calls with Linley on the day of the shooting. Specifically, Robinson contends that trial counsel should have objected to a police investigator's testimony that Wise's mother, Robinson, and Robinson's wife "all shared a cell phone." Robinson contends that this testimony was hearsay because "it is apparent that [the investigator] did not have personal knowledge of that fact."

At the hearing on the motion for new trial, the State protested that it had not had sufficient time to investigate this ground of ineffective assistance, because Robinson filed an amendment to his motion for new trial to assert it approximately one hour before the hearing. Counsel and the trial court agreed that the parties would file briefs on this ground.

At trial, counsel did object to the State referring to the 12 calls as being made by Robinson because the telephone belonged to Wise's mother. In

10

response, the trial court instructed the State to identify the telephone only by its number: "You can't, even if you know who the phone belongs to, affirmatively say who is on the other end of the phone." At the hearing on the motion for new trial, trial counsel testified that he cross-examined the police investigator and elicited the admission that "there was no way that they could effectively say that Mr. Robinson was the one utilizing that phone." He further testified that he "properly fleshed out that Mr. Robinson did not come across as the individual utilizing that phone and I think the State's own testifying officers confirmed that, so I didn't feel as though that objection was necessary." Robinson has not shown that trial counsel's strategy was unreasonable, because this testimony called into doubt whether Robinson was the individual who made some or all of the calls on the day of the murder.

In its supplemental brief on Robinson's motion for new trial, the State provided the transcript of a police interview of Robinson, in which he volunteered the information that he was using Wise's mother's phone "cause my phone was off at the time." Robinson's trial counsel testified at the hearing on the motion for new trial that the State provided him with the case file and he reviewed it prior to trial. And, as the State points out, this information

11

constituted an admission of a party-opponent and a statement against interest by Robinson. See OCGA §§ 24-8-801 (d) (2); 24-8-804 (b) (3).

Moreover, it is undisputed that Robinson used the same phone to make the controlled call from the police station, and the recording and transcript of the call reflect that fact.[5] In addition, he was observed making another call on the same phone, and Linley testified that the calls he received from that phone were made by Robinson. It is not ineffective assistance to fail to make a meritless objection, Faust v. State, 302 Ga. 211, 218 (4) (a) (805 SE2d 826) (2017), nor to fail to object to hearsay when it is cumulative of other, admissible evidence. Marshall v. State, 297 Ga. 445, 449 (2) (a) (774 SE2d 675) (2015). Robinson therefore has not met his burden of showing ineffective assistance on this ground.

Judgment affirmed. All the Justices concur.

---

[5] Trial counsel testified that Robinson's offer "to pick up the phone and obtain the murder weapon from the shooter . . . was the most damaging piece of this case."

12

Decided March 15, 2018.

Murder. Bartow Superior Court. Before Judge D. Scott Smith.

Margaret E. Heinen, for appellant.

Rosemary M. Greene, District Attorney, Sharon M. Fox, Elizabeth M. York, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.