301 Ga. 866
FINAL COPY

S17A1128. JACKSON v. THE STATE.

BLACKWELL, Justice.

Appellant Rodney Jackson was tried by a DeKalb County jury, and he was convicted of murder and two related firearms charges. He appeals, asserting that the evidence is insufficient to sustain his convictions and that he was denied the effective assistance of counsel. He also contends that the trial court erred when it admitted a partial recording of a phone call that he made and when it allowed the lead investigator to testify about what another law enforcement officer told him. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] The victim was killed on September 28, 2013. On June 17, 2014, a DeKalb County grand jury indicted the appellant for malice murder, two counts of felony murder, aggravated assault, the unlawful possession of a firearm during the commission of a felony, and the unlawful possession of a firearm by a first offender probationer. The appellant's trial commenced on September 29, 2014, and the jury returned its verdict on October 2, finding the appellant guilty on all counts. The appellant was sentenced to imprisonment for life without parole for malice murder, imprisonment for a consecutive term of five years for the unlawful possession of a firearm during the commission of a felony, and imprisonment for an additional consecutive term of five years for the unlawful possession of a firearm by a first offender probationer. The other counts were vacated or merged. The appellant timely filed a motion for new trial on November 10, 2014, and he amended it on June 1, 2015, June 15,

1. Viewed in the light most favorable to the verdict, the evidence shows that, on the evening of September 28, 2013, the appellant was playing dominoes with his uncles, DeMar "Red" Hackler and Robert Stewart, inside Hackler's DeKalb County apartment. The men saw three teenaged boys acting suspiciously in the parking lot, and one of the boys ran off when the men went outside. Hackler approached the remaining two boys and asked them what they were doing. The boys did not disclose that they had been attempting to steal Stewart's car, but Stewart observed that a screwdriver had been left in the ignition. The boys heard the appellant say that he was going to get his gun, and they ran off. One of the boys heard gunshots as he ran, and he learned the next morning that the other boy — 15-year-old Gregory Jackson — had been fatally shot with a nine-millimeter handgun.

At trial, Stewart described how he and the appellant ran after the boys, and he testified that the appellant (who was a first offender probationer) shot the victim with a nine-millimeter handgun. The surviving boy provided testimony consistent with Stewart's, although he was able to identify the appellant only as

2016, and July 13, 2016. The trial court denied the motion for new trial on July 18, 2016, and the appellant timely filed a notice of appeal on August 15, 2016. The case was docketed in this Court for the April 2017 term and submitted for decision on the briefs.

2

"the guy with dreads . . . to his shoulders" whom he had earlier seen with "Red." And other evidence was presented to establish that, at the time of the killing, the appellant wore his hair in dreadlocks that extended almost to his shoulders and that Stewart (and Hackler) did not have dreadlocks.

The appellant contends that the evidence is legally insufficient to prove beyond a reasonable doubt that he is guilty of the crimes of which he was convicted. In support of this contention, he points to inconsistencies and other reasons to doubt the reliability of the eyewitness testimony, he notes the absence of physical evidence incriminating him, and he says that the lead investigator failed to obtain evidence that would corroborate Stewart's claim that the appellant shot the victim. But Stewart's claim was corroborated by the testimony of the surviving boy, the State was not required to produce any physical evidence, and it was for the jury to determine the credibility of the eyewitnesses. See Johnson v. State, 296 Ga. 504, 505 (1) (769 SE2d 87) (2015). See also Huff v. State, 300 Ga. 807, 809 (1) (796 SE2d 688) (2017). Viewing all the evidence in the light most favorable to the verdict, we conclude that it was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that the

3

appellant was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. The appellant claims that he was denied the effective assistance of counsel because his lawyer failed to call the appellant's mother to testify in his defense. To prevail on a claim of ineffective assistance, the appellant must prove both that his lawyer's performance was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, the appellant must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, the appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B).

This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and we conclude that the appellant has failed to carry it.

The appellant's trial lawyer testified at the hearing on the appellant's motion for new trial that he frequently spoke to the appellant's mother prior to trial and originally hoped that she would be able to testify about "bad blood" between Stewart and the appellant or provide other evidence that would impeach Stewart's credibility. But after continued communications, the lawyer determined that the appellant's mother was not able to offer any such evidence, but instead could only testify as to irrelevant matters, and he made the strategic decision not to call her as a witness. At the hearing on the motion for new trial, the trial judge agreed that the matters to which the mother planned to testify were irrelevant. The trial lawyer's assessment of the mother's potential testimony was not unreasonable, and "[i]nformed strategic decisions do not amount to inadequacy under Strickland." Washington v. State, 294 Ga. 560, 565 (3) (755 SE2d 160) (2014) (citation and punctuation omitted). Accordingly, this enumeration of error is without merit.

3. The appellant asserts that the State's introduction of a partial recording of a phone call that the appellant made to his mother violated the Rule of

5

Completeness. See OCGA §§ 24-1-106 and 24-8-822.[2] Here, the appellant called his mother from jail, and near the beginning of the phone call, the appellant told his mother that he would not plead guilty because he had not done anything wrong. Later in the phone call, they discussed Stewart, and the appellant told his mother to encourage Stewart to stay "out of sight, out of mind" while police investigators were looking for him. The State was permitted to play for the jury a recording of the phone call that only included the portion of the call in which the appellant discussed Stewart (and that excluded other portions of the call, including where the appellant claimed to his mother that he had not done anything wrong).

The Rule of Completeness prevents parties from misleading the jury by presenting portions of statements out of context, but it "does not make admissible parts of a statement that are irrelevant to . . . the parts of the statement introduced into evidence by the opposing party." Allaben v. State, 299

---

[2] OCGA § 24-1-106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which, in fairness, should be considered contemporaneously with the writing or recorded statement." Similarly, OCGA § 24-8-822 provides that, "[w]hen an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence."

Ga. 253, 256 (2) (787 SE2d 711) (2016) (citation omitted). See also United States v. Simms, 385 F3d 1347, 1359 (11th Cir. 2004) (Rule of Completeness "permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced") (citation omitted).[3] Here, the portion of the phone call in which the appellant told his mother about a potential plea offer (and in which he denied having done anything wrong) was unrelated to the later conversation about Stewart (and separated by conversations about a potential alibi and family issues involving the appellant's father). The discussion about a plea was not necessary "in fairness . . . to be considered" as part of the later discussion about Stewart because it did not qualify, explain, or place into context the appellant's request that his mother encourage Stewart to remain unavailable to investigators. See United States v. Eady, 591 Fed. Appx. 711, 715-716 (II) (A) (11th Cir. 2014).

---

[3] OCGA § 24-1-106 — which was adopted as part of our new Evidence Code — mirrors Federal Rule of Evidence 106, and "the General Assembly intended for Georgia courts to look to th[at] federal rule[ ] and how federal appellate courts have interpreted th[at] rule[ ] for guidance." Parker v. State, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015). OCGA § 24-8-822 – which also was adopted as part of our new Evidence Code – is identical to former OCGA § 24-3-38, see Allaben, 299 Ga. at 256 (2), n. 4, and when courts consider the meaning of a provision carried forward from the old Evidence Code, the courts properly may look to decisions under the old Code. See State v. Frost, 297 Ga. 296, 299 (773 SE2d 700) (2015).

As a result, the trial court did not err when it allowed the State to play only the portion of the phone call in which the appellant discussed Stewart.

4. Finally, the appellant claims that the trial court erred when it allowed the lead investigator to testify on redirect about what another investigator told him. In response to the appellant's hearsay objection, the trial court ruled that the testimony — in which the lead investigator passed along the other investigator's conclusion that a certain eyewitness "did not see anything of evidentiary value" — was admissible to explain why the lead investigator did not follow up with that eyewitness.

As the appellant points out, an investigating officer may not testify about what others told him during his investigation merely "under the guise of explaining the officer's conduct." Weems v. State, 269 Ga. 577, 579 (2) (501 SE2d 806) (1998). But here, a central tenet of the appellant's defense was his claim that the lead investigator had inadequately performed his duties, and it was the appellant who brought up the subject of the eyewitness when he asked the investigator on cross-examination if he "did any further investigation" related to this eyewitness. (And the lead investigator's acknowledgment that he did not follow up with the eyewitness allowed the appellant to return to this

8

subject in his closing argument, when he reviewed the numerous alleged failings of the lead investigator, including his failure to follow up with the eyewitness at issue.) Given that the conduct of the lead investigator was a material issue in the case, the trial court did not err when it concluded that the lead investigator could report on what the other investigator told him (that the eyewitness had not seen "anything of evidentiary value") to explain on redirect why he chose not to follow up with the eyewitness. See Weems, 269 Ga. at 579 (2) ("it is the rare instance in which the conduct of an investigating officer is a matter concerning which the truth must be found"). See also OCGA § 24-8-801 (c) ("'[h]earsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").[4]

Judgment affirmed. All the Justices concur.

---

[4] We also note that there was no substantial danger of unfair prejudice caused by the introduction of the statement allegedly made to the lead investigator. See United States v. Jiminez, 564 F3d 1280, 1288 (III) (11th Cir. 2009).

Decided August 28, 2017.

Murder. DeKalb Superior Court. Before Judge Scott.

Dell Jackson, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Deborah D. Wellborn, Roderick B. Wilkerson, Buffy D. Thomas, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.