303 Ga. 758
FINAL COPY

S18A0427. WATSON v. THE STATE.

NAHMIAS, Justice.

Appellant Allen Watson was convicted of felony murder and possession of a firearm in connection with the shooting death of Jackise McKie. On appeal, he contends that the trial court erred by allowing the lead detective to testify as a firearms expert and raises two claims of ineffective assistance of counsel. We affirm.[1]

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On the evening of November 9, 2014, Randall Whitfield hosted a party in his garage for people to watch a Falcons

---

[1] The crimes occurred on November 9, 2014. On February 12, 2015, a DeKalb County grand jury indicted Appellant for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. His trial began on May 31, 2016 and on June 3, the jury found him not guilty of malice murder, but guilty of the other charges. The trial court sentenced Appellant to serve life in prison for felony murder and a consecutive term of five years for the firearm offense; the aggravated assault verdict merged. Appellant filed a timely motion for new trial, which he amended with new counsel on August 17, 2017. After an evidentiary hearing on August 23, 2017, the trial court denied the motion on September 5. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the term beginning in December 2017 and submitted for decision on the briefs.

game, drink, and gamble. Among the guests were Appellant, McKie, Tyre Howard, and Paul Hogan. They and Whitfield had attended high school together, and Whitfield regularly hosted similar parties during Falcons games. Appellant arrived at the party with a bottle of liquor, a handgun, and a guest, unknown to the regular group and identified only as "Cool," who was also armed with a handgun. Shannon Fort, Howard's girlfriend who was also at the party, was upset about the guns, so Howard asked that everyone put their guns on a table off to the side; Appellant, Cool, and Hogan complied. Fort and Hogan later testified that the mood was tense and there was a bad "vibe" at the party, which they attributed to Cool.[2]

Cool and McKie gambled for most of the evening. At some point, Appellant and Cool left the party to get more liquor and cash to continue gambling, and they retrieved their guns on their way out. When they returned, Cool and McKie resumed playing dice. They soon began to argue, and McKie accused Cool of cheating. Appellant drunkenly intervened on behalf of Cool. Appellant and McKie stood facing each other, both yelling, "What are you

---

[2] The Falcons defeated the Tampa Bay Buccaneers 27-17, so the game presumably did not contribute to the bad vibe.

2

going to do?" as if they were going to fight. Whitfield attempted to ease the tension by standing between Appellant and McKie, trying to calm down McKie, and telling the two men to "chill it out." But Appellant then pulled out his gun, cocked it, swung his arm around Whitfield, and hit McKie in the forehead with the gun. The gun fired, with the bullet entering McKie's skull just above his right eye and exiting the back of his head, killing him. According to Hogan, Appellant said, "Da*n, fu*k, the gun went off, bro. I shot the man, fu*k." Appellant and Cool then fled the garage.

When the police arrived at the scene, they found a .380-caliber pistol, a .40-caliber live round under a car in the driveway, and a .40-caliber projectile embedded in the wall of the garage. The party guests did not know if the .380-caliber pistol was one of the guns that Appellant and Cool brought to the party, and no other gun was recovered in connection with the shooting. The medical examiner was unable to determine what caliber bullet had struck and killed McKie.

Whitfield and Hogan both identified Appellant as the shooter in a photo lineup and at trial. No witness indicated that anyone other than Appellant

3

brandished a gun before McKie was shot. The party guests described Cool and the investigation yielded a potential address for him, but he was never further identified or located. Appellant did not testify at trial. His theory of defense was that the State could not prove that Appellant was the shooter, primarily because the investigation was mishandled, including by the failure to pursue and locate Cool. Appellant did not claim that the shooting was accidental.

Appellant does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that the evidence presented at trial and as summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2.    Appellant contends that Detective Courtney Brown, who led the

4

investigation of the shooting, should not have been allowed to testify as an expert about the firearms involved in the case. But the one objection Appellant's trial counsel made was properly overruled, the trial court did not plainly err with regard to the detective's subsequent, unobjected-to testimony about guns, and Appellant's trial counsel was not ineffective in not raising further objections.

(a) On direct examination at trial, Detective Brown described his experience with and knowledge of firearms as follows:

> I've been an officer for almost twenty years. And every year that I have been an officer, you have to qualify, sometimes once, sometimes twice a year with firearms. The firearms that I've been trained with mainly have been nine millimeter, [.]380 caliber, and [.]40 caliber handguns. In this training they teach you the nomenclature of the gun, which is basically the gun itself, the different parts of the gun, how to load the weapon, how to make the weapon safe, proper handling techniques, so on and so forth. And I probably have over, I would say, 300 to 400 hours of training, firearms training.

The prosecutor then questioned Detective Brown about the difference between .40-caliber and 9-millimeter firearms. The detective explained that in most cases the only apparent difference between those two types of handguns is their barrels, as their frames are mostly the same size so the guns look the

5

same. Appellant's trial counsel objected to this line of questioning on the ground that there was no foundation for Detective Brown to talk about guns. The trial court overruled the objection. Later in the direct examination, the prosecutor asked the detective to discuss trigger pull. Without objection, Detective Brown testified that he thought it takes five to eight pounds of pressure to pull the trigger and fire most semiautomatic handguns, although he has seen a .40-caliber gun modified to require only about three pounds of pressure. On redirect examination, the prosecutor asked Detective Brown whether it was possible for a .380-caliber gun, like the one found at the crime scene, to fire .40-caliber ammunition like that found at the scene. Again without objection, the detective answered that it was not possible.

(b)     Appellant argues that the testimony described above was "beyond the ken of the average layman" and so required Detective Brown to be qualified as an expert in firearms. Smith v. State, 247 Ga. 612, 619 (277 SE2d 678) (1981).[3] A witness can be qualified as an expert in a particular field if he

_____

[3] OCGA § 24-7-707, which is part of the new Evidence Code under which this case was tried, says in pertinent part that "[i]n criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible." This provision was carried forward from former OCGA § 24-9-67 of the old Evidence Code and does not have any equivalent provision in the federal rules, and thus it is appropriate to rely on decisions under the old Code. See

6

demonstrates "special knowledge . . . derived from experience." Billings v. State, 293 Ga. 99, 104-105 (745 SE2d 583) (2013) (citation and punctuation omitted). By overruling Appellant's objection following the question and answer regarding the difference between .40-caliber and 9-millimeter firearms, the trial court implicitly accepted Detective Brown as an expert on that subject. See Bly v. State, 283 Ga. 453, 458 (660 SE2d 713) (2008). We review the trial court's ruling only for an abuse of discretion, see Thomas v. State, 290 Ga. 653, 658 (723 SE2d 885) (2012), and the court did not abuse its discretion in overruling Appellant's objection. Detective Brown's description of his training over many years with both .40-caliber and 9-millimeter handguns sufficiently qualified him to describe the general difference in appearance between the two guns, which was the answer to which Appellant objected.

(c) To the extent Appellant now argues that Detective Brown's experience with firearms was insufficient to qualify him to answer the questions he was subsequently asked about trigger pull pressure and the possibility of a .380-caliber gun firing .40-caliber bullets, our review is limited to plain error,

---

Davis v. State, 301 Ga. 397, 407 n.10 (801 SE2d 897) (2017).

because Appellant did not object to these questions at trial. See OCGA § 24-1-103 (a) (1), (d). To establish plain error on these evidentiary rulings, Appellant must show that the error alleged was not affirmatively waived; was obvious and not subject to reasonable dispute; probably affected the outcome of the trial; and seriously affected the fairness, integrity, or public reputation of judicial proceedings. See Gates v. State, 298 Ga. 324, 327-328 (781 SE2d 772) (2016).

Pretermitting the other elements of this test, Appellant has not shown that the detective's disputed testimony likely affected the outcome of the trial. Two eyewitnesses who knew Appellant identified him as the shooter; one of them testified that Appellant said "I shot the man" right after shooting the victim; no witness indicated that anyone else brandished a gun before the victim was shot; and Appellant did not claim that the shooting was unintentional. Thus, it is not probable that the jury would have reached a different verdict had it not heard Detective Brown's generalized testimony about trigger pull pressure or been told that a .380-caliber handgun cannot fire .40-caliber ammunition. The admission of the detective's testimony on those two issues therefore does not amount to plain error.

(d) Appellant also argues that his trial counsel provided ineffective

8

assistance by not objecting to Detective Brown's testimony on those same two issues. To prevail on a claim of ineffective assistance of counsel, Appellant must prove both deficient performance and resulting prejudice. See Strickland v. Washington, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Appellant must show that his trial counsel performed in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-690. To establish prejudice, Appellant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. We need not address both components of this test if Appellant has not proved one of them. See Walker v. State, 301 Ga. 482, 489 (801 SE2d 804) (2017).

The test for prejudice in the ineffective assistance analysis is equivalent to the test for harm in plain error review. See Walker, 301 Ga. at 488. Thus, from our holding in the previous subdivision that the admission of Detective Brown's testimony about trigger pull pressure and bullet-firearm compatibility did not cause harm, it follows that trial counsel's failure to object to that testimony did not cause prejudice and thus did not constitute ineffective

9

assistance.  See id.

3.    Appellant's trial counsel questioned Detective Brown on cross-examination about the detective's decision not to investigate Appellant's associate Cool, despite labeling Cool "Suspect Number Two" and having a possible address for him.  On redirect examination, the prosecutor asked Detective Brown why he did not go to the address linked to Cool.  The detective replied:

> Based on the witnesses that were at the scene, they all identified the [Appellant] as the shooter in very detail, very good detail.  They all knew him personally.  And like I said, the only thing we had to go on was the nickname of Cool as the second subject.  I didn't think there was — I didn't think that Cool, based on the statements given, was an intricate part of the incident, being that the subject here was the one identified as waving the handgun around at the location, being loud, boisterous, and actually was the one who actually struck the victim and shot him in the process.

Appellant contends that his counsel was ineffective in failing to make a hearsay or improper bolstering objection to the testimony that Appellant "actually was the one who actually struck the victim and shot him in the process."  We disagree.

Trial counsel's decision not to object was not deficient performance, because an objection would have been meritless.  Detective Brown mentioned

10

what the eyewitnesses had told him to explain why he focused his investigation on Appellant, rather than trying to identify and locate Cool. Because that explanation followed the attack on the detective's investigation on cross-examination, the testimony was permissible. An investigating officer may not testify about what others told him "merely under the guise of explaining the officer's conduct." Jackson v. State, 301 Ga. 866, 870 (804 SE2d 367) (2017) (citation and punctuation omitted). However, where the defense was significantly based on the assertion that the lead investigator inadequately performed his duties and the subject of Cool in particular was brought up by the defense on cross-examination, it was appropriate for the prosecutor to ask and for the detective to explain why he conducted the investigation as he did. See id.

Thus, a hearsay objection would have been properly overruled because the evidentiary value of the witnesses' statements that guided Detective Brown's investigation was in their existence, not their truth. See United States v. Jiminez, 564 F3d 1280, 1287 (11th Cir. 2009).[4] An improper bolstering

[4] Under the new Evidence Code, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c). This provision uses similar language to Federal Rule of

11

objection also would have been meritless, as the detective's testimony did not directly address the credibility of another witness. See Brown v. State, 302 Ga. 454, 460 (807 SE2d 369) (2017). Failure to make a meritless objection cannot support a claim of ineffective assistance. See Faust v. State, 302 Ga. 211, 318-319 (805 SE2d 826) (2017). Moreover, even if an objection would have been sustained, the detective's disputed testimony was not prejudicial, because it was cumulative of the testimony of the two eyewitnesses that the jury had already heard identify Appellant as the shooter. See Hall v. State, 292 Ga. 701, 703 (743 SE2d 6) (2013). Appellant has not established any ineffective assistance of counsel.

Judgment affirmed. All the Justices concur.

---

Evidence 801 (c) (2), so we properly look to federal appellate decisions when interpreting it. See Smith v. State, 299 Ga. 424, 429-430 (788 SE2d 433) (2016).

Decided May 7, 2018 — Reconsideration denied June 4, 2018.

Murder. DeKalb Superior Court. Before Judge Coursey.

Daniel H. Petrey, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Deborah D. Wellborn, Helen P. Peters, Jennifer L. Brooks, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.