305 Ga. 644
FINAL COPY

S19A0323.  CASTILLO-VELASQUEZ v. THE STATE.

WARREN, Justice.

Appellant Saul Castillo-Velasquez appeals his convictions for malice murder and possession of a firearm during the commission of a crime stemming from the shooting death of Silverio Acosta.[1]  On appeal, Castillo-Velasquez contends that the trial court erred by admitting other-act evidence under OCGA § 24-4-404 (b) ("Rule 404

[1]  The crimes occurred on June 16, 2013.  On July 8, 2013, a Hall County grand jury indicted Castillo-Velasquez for malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony.  On August 24, 2015, Castillo-Velasquez pled guilty to malice murder and the firearm offense, but on July 20, 2016, the trial court granted Castillo-Velasquez's motion to withdraw his guilty plea.  Castillo-Velasquez's trial began on August 7, 2017, and on August 10, the jury found him guilty on all counts.  On August 11, 2017, Castillo-Velasquez was sentenced to life without parole for malice murder and five consecutive years for possession of a firearm.  The felony-murder verdict was vacated by operation of law, and the aggravated-assault verdict was merged.  On August 16, 2017, Castillo-Velasquez filed a motion for new trial, which was amended by his new counsel in July 2018.  On August 9, 2018, the trial court denied the motion for new trial, as amended.  Castillo-Velasquez filed a timely notice of appeal, and the case was docketed in this Court for the term beginning in December 2018 and submitted for decision on the briefs.

(b)") and by admitting Acosta's bloody clothes into evidence. He also raises one claim of ineffective assistance of counsel. We conclude that his claims have no merit and affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence showed that, on June 16, 2013—Father's Day—Castillo-Velasquez encountered Silverio Acosta ("Acosta") at a recreational soccer league's championship game, which attracted hundreds of attendees. Claudia Acosta ("Claudia"), Acosta's daughter, testified that, after the game was over, she was walking with Acosta when Castillo-Velasquez came running toward them, said "hola, amigo," and began shooting, continuing even after Acosta fell to the ground. She testified that Castillo-Velasquez was about five feet from Acosta when he shot him. Jose Martinez-Orellana, who also witnessed the shooting, testified that Castillo-Velasquez came out from behind a barrel, approached Acosta and said, "do you remember me?" and then started shooting. Acosta, who was unarmed, was shot four times and died from a gunshot wound to the head. After the shooting, Castillo-Velasquez ran away until he was tackled by two

Hall County Marshals working security for the soccer game. One of them testified that Castillo-Velasquez was smiling after the shooting and said, "I shot him, I shot him, he killed my father." Claudia testified that there had been rumors about tensions between the Acosta and Castillo-Velasquez families and that Acosta's father had a large machete scar across his cheek that he had gotten from a fight years earlier.

Castillo-Velasquez testified in his own defense at trial. He testified that, when he was between seven and nine years old in El Salvador, Acosta and Acosta's father killed Castillo-Velasquez's father with machetes as Castillo-Velasquez watched. Sometime in late 2012, Castillo-Velasquez moved to Gainesville, Georgia, where Acosta was also living. According to Castillo-Velasquez, he had two encounters with Acosta between arriving in Gainesville and the time of the shooting. One was in a store, where, according to Castillo-Velasquez, Acosta grabbed a gun that was in his front pants waistline after seeing Castillo-Velasquez. The other was in a restaurant, where Castillo-Velasquez said Acosta looked at him in a

"bad way" and then came over with a gun in his hand and threatened to kill Castillo-Velasquez as he had killed Castillo-Velasquez's father.

Castillo-Velasquez also testified that when he saw Acosta at the soccer game on the day of the shooting, they both stopped walking and Acosta began laughing. According to this account, Acosta said he was laughing because he had killed Castillo-Velasquez's father; Acosta pulled a gun, telling Castillo-Velasquez to defend himself because Acosta was going to kill him; and Castillo-Velasquez then pulled his gun and shot Acosta. Castillo-Velasquez also testified that he has schizophrenia and paranoia and that he hears constant voices in his head and sees black, demon-shaped figures. He testified that those problems began in 2009, and that he took various medications from 2009 until about three months before the shooting, when he stopped taking them.

At trial, the State introduced evidence that Castillo-Velasquez had previously been arrested for shooting at three men in New York. Specifically, the police officer who responded to that incident

testified that in November 2004, Castillo-Velasquez approached an apartment building in New York and shot at three men until his handgun ran out of bullets. After being arrested and advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), Castillo-Velasquez signed a written statement saying that the three men had beaten him with a baseball bat four years earlier and that, in the summer before the shooting, the men told him that, if it were not for his daughter, they would have killed him. Castillo-Velasquez stated that, on the day of the shooting, he had been drinking and started thinking about the men who previously had attacked him with a bat and that he then decided to find and shoot at the three men. This evidence was admitted under Rule 404 (b) for the purpose of showing Castillo-Velasquez's intent in shooting Acosta.

The trial court charged on both self-defense and delusional compulsion, and Castillo-Velasquez argued to the jury that, in shooting Acosta, his mental delusion overpowered his will such that

he had no criminal intent and that the delusion led him to believe that he was acting in self-defense.

Castillo-Velasquez does not contest the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Castillo-Velasquez guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Castillo-Velasquez contends that the trial court abused its discretion in admitting evidence of his New York crime.

Under Rule 404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith," but such evidence is admissible for other purposes, including to prove intent.

> The party offering evidence under OCGA § 24-4-404 (b) must show three things: (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.

*Kirby v. State*, 304 Ga. 472, 479 (819 SE2d 468) (2018).[2]

Looking to the first element of a Rule 404 (b) evaluation, the evidence of the New York crime was relevant here to prove intent. "Relevant evidence" is defined broadly as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. We have held that a defendant puts intent at issue when he pleads not guilty and does not affirmatively take steps to remove intent from being at issue. See *Kirby*, 304 Ga. at 480; *Olds v. State*, 299 Ga. 65, 72-75 (786 SE2d 633) (2016). Here, Castillo-Velasquez not only put his intent at issue by pleading not guilty, he affirmatively put it at issue

---

[2] Castillo-Velasquez does not dispute that the evidence was sufficient to show that he committed the New York act, so we focus on the first two prongs of the test.

with his defense that he acted from delusions that overpowered his will and negated his criminal intent. Indeed, he specifically argued that the jury should find him not guilty by reason of insanity because he was acting under a delusional compulsion such that his "will to do the right thing [was] overpower[ed] . . . so that there's really no criminal intent at the time." Similarly, Castillo-Velasquez argued that

> when someone doesn't have the criminal intent because his will is . . . overpowered by the voices and the visions and what he sees about that man with a gun over and over and over again to commit this particular act . . . that person cannot be held . . . criminally responsible.

The State's theory, on the other hand, was that Castillo-Velasquez acted not from delusions, but with the intent to commit the crimes in question to "right" the perceived wrongs committed against his family by Acosta and Acosta's father. We have explained that "[w]here the intent required for the charged offenses and other acts is the same, and intent is at issue, the first prong of the Rule 404 (b) test is satisfied." *Booth v. State*, 301 Ga. 678, 683 (804 SE2d 104)

(2017).  This is true "regardless of whether the charged offense is one requiring general or specific intent."  Id.

Among other crimes, Castillo-Velasquez was charged here with aggravated assault with a deadly weapon, a general-intent crime, and felony murder based on that same crime.  *Booth*, 301 Ga. at 684.  The other-act crime in New York involved an assault with a deadly weapon—the same type of general-intent crime as the aggravated assault charged here.  Accordingly, the first prong of the Rule 404(b) test was satisfied.  Id. at 685-686.  See also, e.g., *United States v. Diekhoff*, 535 F3d 611, 618 (7th Cir. 2008) (holding that in a prosecution for the kidnapping of a female acquaintance in which the defendant raised the defense of insanity, the trial court did not abuse its discretion in admitting other-act evidence that the defendant had kidnapped a girlfriend on a previous occasion, concluding that the other act "tended to show" that the defendant "was aware of the wrongfulness of his behavior" and was "capable of planning a complicated criminal act").

The second part of the Rule 404 (b) analysis, which requires us to weigh the probative value of evidence determined to be relevant against its danger of unfair prejudice, "is governed by OCGA § 24-4-403." *Kirby*, 304 Ga. at 480. That Code section provides:

> Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The OCGA § 24-4-403 "Rule 403" analysis "must be done on a case-by-case basis and requires a 'common sense assessment of all the circumstances surrounding . . . the extrinsic act and the charged offense.'" *Kirby*, 304 Ga. at 481 (citation omitted). Moreover,

> [i]n considering the probative value of evidence offered to prove intent, these circumstances include the prosecutorial need for the extrinsic evidence, the overall similarity between the extrinsic act and the charged offense, and the temporal remoteness of the other act.

Id. Castillo-Velasquez claims that the State's need for the other-act evidence was minimal, that there were few similarities between the charged crimes and the New York crime, and that a substantial amount of time elapsed between the 2004 crime and Acosta's murder

in 2013. In particular, Castillo-Velasquez contends that *Brown v. State*, 303 Ga. 158, 162-163 (810 SE2d 145) (2018), requires a reversal in this case. *Brown*, however, is distinguishable. There, the defendant claimed that he shot the victim in self-defense, and we explained that the State's need for the other-act evidence was "extremely low at best," because, in asserting self-defense, the defendant did "not deny the intent to inflict injury, but claimed authority for the act under the legal excuse of reasonable fear of immediate serious harm to oneself or another." Id. at 162 (citation and punctuation omitted). We concluded that the slight probative value of the other-act evidence was substantially outweighed by its danger of unfair prejudice. Id. at 163.

Here, by contrast, Castillo-Velasquez squarely placed his intent at issue by claiming at trial that his delusions completely negated his criminal intent. To rebut that claim, the State needed evidence that Castillo-Velasquez acted with the intent to commit the crimes. See *Kirby*, 304 Ga. at 483 (explaining that "high prosecutorial need" for other-act evidence "greatly increases its

probative value"); *Olds*, 299 Ga. at 76 ("The more strongly an issue is contested, the greater the justification for admitting other act evidence bearing on the point." (citation and punctuation omitted)). As a result, the State had a significant need for the other-act evidence. Moreover, the charged crimes and the past crime bear significant similarities: in both cases, Castillo-Velasquez used a handgun to assault people that he perceived had committed an offense against him or a family member many years before. As for temporal proximity, although almost nine years passed between the 2004 crime and Acosta's murder in 2013, "the prior acts were not so remote as to be lacking in evidentiary value." *Kirby*, 304 Ga. at 484 (citation and punctuation omitted). That is especially true because the time between crimes must be viewed in light of relevant circumstances: in 2006, Castillo-Velasquez was sentenced to eight years in prison in New York, was released in 2011, and was then deported to El Salvador, where he lived before moving to Gainesville in late 2012. We have explained that to have evidentiary value, "the prior crime need not be very recent, especially where a substantial

portion of the gap in time occurred while the defendant was incarcerated." Id. (citation and punctuation omitted).

In sum, "[b]ecause the major function of OCGA § 24-4-403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect," a trial court's decision "to exclude evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Kirby*, 304 Ga. at 480 (citation and punctuation omitted). Because Castillo-Velasquez strongly contested the issue of intent, because the State needed evidence of the New York crime to counter that defense, and because the trial court mitigated the prejudicial impact of the other-act evidence by giving the jury specific instructions about the limited purpose of the evidence, see *McWilliams v. State*, 304 Ga. 502, 511 (820 SE2d 33) (2018), we conclude that the trial court did not abuse its discretion in concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to Castillo-Velasquez.

3. Castillo-Velasquez contends that trial counsel provided constitutionally ineffective assistance by failing to present available evidence corroborating Castillo-Velasquez's testimony about his mental health. We conclude that this claim is without merit.

To succeed on a claim of ineffective assistance of counsel, Castillo-Velasquez must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to him. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To carry the burden of overcoming this presumption, a

defendant "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016). "In particular, 'decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.'" Id. (citation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

Castillo-Velasquez contends that trial counsel had obtained his previous medical records from the New York Department of Corrections and that trial counsel performed deficiently in failing to

introduce the parts of those records that contained Castillo-Velasquez's statements about his hallucinations and paranoia. At the motion for new trial hearing, trial counsel initially testified that he did not recall why he did not attempt to introduce those parts of the medical records, but then said that "it seems like" he did not attempt to do so because he thought it might permit the State to introduce expert testimony regarding Castillo-Velasquez's mental health or to introduce other parts of the "voluminous" medical records, including records from places other than the New York Department of Corrections, that counsel said were unfavorable to Castillo-Velasquez—including parts that counsel said showed that Castillo-Velasquez's drug and alcohol overdoses had contributed to his mental-health issues. In this regard, at the motion for new trial hearing, the State introduced a report by a psychiatrist it had hired to evaluate Castillo-Velasquez's criminal responsibility. To conduct the evaluation, the State provided the psychiatrist with, among other things, medical records from prisons and hospitals in New York, other than the New York Department of Corrections. The

psychiatrist concluded that "[t]he evidence from the records indicate that Mr. Castillo[-Velasquez] has had a history of some hallucinations related to his alcohol use." Counsel testified that he did not want evidence to be admitted that Castillo-Velasquez's mental health issues were caused by his own actions, as opposed to a "physical ailment or injury," noting that there was no challenge to Castillo-Velasquez's testimony that "he had been hit in the head at an early age and had a head injury."[3]

Trial counsel correctly recognized that the State could have sought to admit the portions of the New York Department of Corrections medical records, as well as medical records from other facilities, that were unfavorable to Castillo-Velasquez. First, under the so-called "rule of completeness," see OCGA § 24-1-106,[4] the State

---

[3] Castillo-Velasquez testified at trial that when he was young, "a piece of wood fell on [his] head and . . . broke [his] skull." He added that he "ended up talking, saying things that [his] family could not understand."

[4] OCGA § 24-1-106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which, in fairness, should be considered contemporaneously with the writing or recorded statement." See also OCGA § 24-8-822 (providing that

could have sought to introduce other parts of the Department of Corrections medical records. That rule applies to "a writing" and thus applies to the medical records in this case. See 1 Christopher B. Mueller et al., Federal Evidence § 1:44 (4th ed. updated July 2018) (explaining that the "rule of completeness applies to letters and records, recordings, and documents of all sorts," and "is useful with medical records in civil cases," a principle that would apply to criminal cases as well (citing cases)); *Phoenix Assoc. III v. Stone*, 60 F3d 95, 102-103 (2d Cir. 1995) (applying Federal Rule of Evidence 106 to financial statements).[5] The rule "prevents parties from misleading the jury by presenting portions of statements out of context," and permits the introduction of "additional material that is relevant and is necessary to qualify, explain, or place into context

---

"[w]hen an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence").

[5] OCGA § 24-1-106 was adopted as part of our new Evidence Code and mirrors Federal Rule of Evidence 106. The "General Assembly intended for Georgia courts to look to that federal rule and how federal appellate courts have interpreted that rule for guidance." *Jackson v. State*, 301 Ga. 866, 869 n. 3 (804 SE2d 367) (2017) (citation and punctuation omitted).

the portion already introduced." *Jackson v. State*, 301 Ga. 866, 869 (804 SE2d 367) (2017) (citation and punctuation omitted). In light of that rule, the trial court would not have abused its discretion in permitting the State to introduce the portions of Castillo-Velasquez's medical records about which counsel was concerned. *Allaben v. State*, 299 Ga. 253, 256 (787 SE2d 711) (2016) (noting that we review a ruling under the rule of completeness for abuse of discretion). Moreover, as for Castillo-Velasquez's medical records from places other than the New York Department of Corrections, the State could have sought to introduce those records under the principles governing relevant evidence contained in OCGA § 24-4-401 through OCGA § 24-4-403 if Castillo-Velasquez had introduced part of his medical records from the Department of Corrections. And, again, the trial court would not have abused its discretion in permitting the State to introduce Castillo-Velasquez's medical records about which counsel was concerned. See *Young v. State*, 305 Ga. 92, 95 (823 SE2d 774) (2019) (noting that as "a general rule, the admission of evidence lies within the sound discretion of the trial

court"). Accordingly, because we cannot say that counsel's strategy was "'so patently unreasonable that no competent attorney would have followed such a course,'" *Davis*, 299 Ga. at 183 (citation omitted), Castillo-Velasquez's claim of ineffective assistance of counsel fails.

4. Castillo-Velasquez contends that the trial court erred in admitting Acosta's clothes into evidence. In particular, Castillo-Velasquez contends that because the clothes were bloody, the trial court should have excluded the evidence under Rule 403 on the ground that its probative value was substantially outweighed by the danger of unfair prejudice. However, Castillo-Velasquez did not object to the evidence on this ground at trial. Instead, he objected only that it was not relevant. He now concedes that it was relevant, but contends that it should have been excluded under Rule 403. Because this objection was not raised at trial, we consider only whether the trial court committed plain error in admitting the evidence. See *Chrysler Group v. Walden*, 303 Ga. 358, 368-369 (812 SE2d 244) (2018) (explaining that an objection to evidence at trial

on the ground that it was not relevant is not the same as an objection that the evidence should have been excluded for unfair prejudice under Rule 403, and that the latter issue therefore could be analyzed only for plain error).

To establish plain error, Castillo-Velasquez "must point to a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Hightower v. State*, 304 Ga. 755, 759 (822 SE2d 273) (2018). Moreover, for Castillo-Velasquez to establish that the error affected his substantial rights, he "must demonstrate that it caused him harm, meaning 'that the outcome of the trial court proceedings was likely affected.'" Id. (citation omitted). Pretermitting whether Castillo-Velasquez has established that the admission of the clothes was erroneous, he has not shown harm. Because of the strength of the evidence against Castillo-Velasquez, and given that other evidence admitted at trial (and in particular photographs of the crime scene) showed the bloody nature of

Castillo-Velasquez's crimes, we conclude that he has not shown that any error probably affected the outcome of the trial court proceedings.

Judgment affirmed. All the Justices concur.

Decided April 15, 2019.

Murder. Hall Superior Court. Before Judge Gosselin.

Y'Chili Law, Kalki Yalamanchili, for appellant.

Lee Darragh, District Attorney, Wanda L. Vance, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General, for appellee.