311 Ga. 835
FINAL COPY

S21A0229.  SULLIVAN v. THE STATE.

LaGrua, Justice.

Appellant Jaren Anthony Sullivan was convicted of malice murder and other charges related to the shooting death of Marques Dockery and the aggravated assault of Najee Murray.  On appeal, Appellant contends that his trial counsel rendered constitutionally ineffective assistance by failing to present evidence of Dockery's alleged gang affiliation, failing to elicit testimony suggesting that Dockery was armed, and failing to object when an investigator offered his opinions regarding the shooting.  Also contending that these errors combined to prejudice him, Appellant seeks reversal of his convictions.  We conclude that these claims lack merit, so we affirm.[1]

---

[1] The crimes occurred on October 11, 2016.  On January 5, 2017, a DeKalb County grand jury indicted Appellant for malice murder; felony murder; three counts of aggravated assault, against Dockery, Murray, and

1. The evidence presented at trial showed that Appellant was previously in a romantic relationship with Faytasia Terry, with whom he had a daughter, J. S.  After Appellant and Terry ended their relationship, Terry began dating Dockery.

On October 10, 2016, Appellant planned to drop off J. S. at Terry's house in the evening.  However, Appellant messaged Terry saying that he would drop off J. S. the next morning.  The following day, Appellant called Terry, asking her to pick up J. S. at his home instead.  During this phone call, Dockery "snatched" the phone from Terry and spoke for a few minutes with Appellant.  Dockery had

Faytasia Terry, respectively; and possession of a firearm during the commission of a felony.  At a trial from June 11 to 15, 2018, the jury found Appellant guilty of all charges except the aggravated assault of Terry.  On June 15, 2018, the trial court sentenced Appellant to serve life in prison for malice murder; ten consecutive years for the aggravated assault of Murray; and five consecutive years for possession of a firearm during the commission of a felony. The felony murder conviction was vacated by operation of law, and the aggravated assault count as to Dockery merged with the malice murder conviction.  On September 26, 2018, Appellant filed a motion for an out-of-time appeal.  The trial court granted this motion on January 11, 2019.  Appellant timely filed a motion for new trial on January 31, 2019, and amended it on August 5, 2019.  The trial court held a hearing on the motion for new trial on August 12, 2019, and denied the amended motion on December 4, 2019. Appellant timely filed a notice of appeal on December 18, 2019, this Court docketed Appellant's case to the term beginning in December 2020, and the case was thereafter submitted for a decision on the briefs.

previously expressed disdain over Appellant's lack of support for J. S. and his disrespect toward Terry.

Terry and Dockery then drove to Appellant's house. Terry's brother, Murray, went with them, riding in the passenger seat of the car. Upon arrival, Dockery parked in the cul-de-sac. After they arrived, Appellant emerged from his house, with J. S. by his side and one hand in his jacket pocket. Dockery helped Terry get J. S. into the car, then walked over to Appellant and began talking to him. Less than two minutes later, Terry heard gunshots. Terry testified that she never heard Appellant or Dockery raise their voices before the shots rang out.

When Terry turned to see what was happening, Dockery was holding his neck, running to the front of the car, and trying to duck down. Terry and Murray testified that Appellant was shooting at Dockery from within his jacket pocket. Appellant then removed his hand and his gun from his pocket and shot over the car as Dockery ran and fell in the middle of the cul-de-sac. Murray stepped out from the passenger seat of the car and called for Appellant to stop

shooting; Appellant then shot Murray twice. Appellant went to where Dockery had collapsed and shot Dockery several more times. Dockery died at the scene.

After the shooting, Appellant removed J. S. from the car. Appellant took Terry's phone, which she had been using to call 911, and slammed it on the ground. Appellant shouted at Terry and Murray that "if [they] did not move [Dockery's] body that he would come back out and continue shooting." Appellant then went in his house.

Four neighbors testified that they heard gunshots and witnessed Appellant shoot Dockery multiple times. As the police arrived, Appellant came out of his house with his hands in the air, claiming that he acted in self-defense. However, Terry testified that she could see Dockery's hands during the shooting and never saw Dockery reach for anything and that Dockery never owned a gun during their relationship. Other witnesses testified that they saw nothing in Dockery's hands. Furthermore, an investigator testified that there was no gun found in the car. After obtaining a search

4

warrant for Appellant's home, police officers found a nine-millimeter gun and two loaded ammunition magazines in a washing machine.

Appellant testified at trial, claiming that he acted in self-defense. The State presented evidence challenging Appellant's testimony and pointing out multiple inconsistencies in statements Appellant made to the police compared to his trial testimony. For example, Appellant made no mention in his police statement that Dockery punched or made contact with him, but at trial claimed that Dockery attempted to punch him shortly before Appellant started shooting. Appellant also stated at trial that he saw Murray reaching for something under the passenger seat, but his statements to the police contained nothing to that effect.[2]

2. Appellant contends that trial counsel was constitutionally ineffective on three grounds. To succeed on a claim of ineffective assistance, Appellant "must prove both that his lawyer's

_____

[2] Appellant does not challenge the sufficiency of the evidence supporting his convictions, and we no longer routinely consider sufficiency sua sponte in non-death penalty cases. See *Davenport v. State*, 309 Ga. 385, 399 (846 SE2d 83) (2020).

5

performance was professionally deficient and that he was prejudiced as a result." *Styles v. State*, 309 Ga. 463, 471 (5) (847 SE2d 325) (2020) (citation and punctuation omitted); see also *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984).

> "To establish deficient performance, Appellant must show that . . . trial counsel performed in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. To establish prejudice, Appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Watson v. State*, 303 Ga. 758, 761-762 (2) (d) (814 SE2d 396) (2018) (citation and punctuation omitted). "[I]f [Appellant] fails to establish one prong, we need not examine the other." *Armstrong v. State*, 310 Ga. 598, 607 (5) (852 SE2d 824) (2020) (citation and punctuation omitted).

(a) Appellant first contends that his trial counsel was ineffective for failing to present evidence that Dockery was in a gang. This evidence, Appellant argues, would have established that Appellant acted out of a reasonable fear for his life and supported his claim of self-defense. This argument fails.

6

Even assuming, without deciding, that trial counsel's performance was constitutionally deficient, any deficiency would not have prejudiced Appellant's case. There was substantial eyewitness testimony that Appellant, without provocation, shot Dockery, then shot Murray, and then shot Dockery again while he was lying in the street. Dockery was unarmed, and there was little, if any, evidence supporting Appellant's claim that he acted in self-defense. Even if the evidence of Dockery's gang affiliation had been introduced at trial, that would have been outweighed by the evidence described above. Thus, "it is highly unlikely that the evidence in question, even if admitted, would have persuaded the jury that [Appellant] was justified in shooting [Dockery], and thus [Appellant] has failed to show prejudice." *Jones v. State*, 310 Ga. 886, 892 (3) (855 SE2d 573) (2021). This enumeration accordingly lacks merit.

(b) Appellant next contends that he received ineffective assistance when trial counsel failed to present witness testimony that officers retrieved what looked like a gun from Dockery's car. During a pre-trial immunity hearing and at trial, Wilford Copeland,

7

Appellant's neighbor and a witness for the defense, testified about aspects of the crime scene investigation that he witnessed from his front porch, saying that he saw investigators remove a dog from the car and then saw investigators remove an item from the passenger side of the car. During the immunity hearing, Copeland testified that he "assumed" the item was a gun based on "the way [the investigator] was holding it" when it was removed, but that he was not sure.

Before trial, the State moved in limine to exclude Copeland's speculation about seeing a gun, and the trial court reserved ruling on that motion until Copeland's testimony at trial. During the direct examination of Copeland, Appellant's trial counsel asked if Copeland saw anything during the search of Dockery's vehicle, and Copeland stated, "Well like I said, I saw them give the Chihuahua to someone. But then I sat there and when I was here before [at the immunity hearing], I didn't directly see what I thought I saw."

A bench conference ensued, and the court instructed trial counsel "to ask [Copeland] some more direct questions so as to avoid

8

him speculating on the record and in front of the jury." When testimony resumed, Copeland said that he saw a detective reach under the seat, retrieve an item, lay the item on the back of the car, and take pictures of it. He further testified: "so I assumed that — I don't know what it was because I didn't see it." The State objected, and the court stopped Copeland, telling him not to assume anything and answer only the question that was asked. The following colloquy then occurred:

> TRIAL COUNSEL: Did you see an object being taken from the vehicle after the Chihuahua?
> COPELAND: Yes, sir.
> TRIAL COUNSEL: Did you see that object photographed by detectives?
> COPELAND: Yes, sir.
> TRIAL COUNSEL: Do you know what color the object was?
> COPELAND: Not directly, sir.
> TRIAL COUNSEL: Okay. Did you see any other objects taken from the vehicle?
> COPELAND: No, sir.

Appellant contends that trial counsel performed deficiently at trial by failing to elicit Copeland's immunity hearing testimony about seeing what he assumed was a gun, which Appellant argues

9

would have been admitted but for trial counsel's mistaken belief that the trial court's admonishment to avoid speculation was a ruling prohibiting the specific testimony outright. Appellant argues that trial counsel even testified at the motion for new trial hearing that he did not believe that Copeland's testimony was speculative.

Again, even if trial counsel's failure to elicit this evidence was deficient performance, this failure was not prejudicial, as there is no reasonable probability that the outcome of the proceeding would have been different had the evidence been presented. See *Watson*, 303 Ga. at 762 (2) (d). Copeland's uncertain testimony about what the item was would likely have been unpersuasive, particularly in light of the strong evidence against Appellant's self-defense claim. Even assuming, without deciding, that the object was a gun, there was no evidence that Dockery was holding a gun at the time of or during the shooting, or that Appellant saw the gun when he began shooting at Dockery. Copeland testified that the object was removed from the passenger side of the car, which is where Murray — not Dockery — had been sitting when the confrontation between

10

Appellant and Dockery began. Moreover, Appellant continued to shoot Dockery while Dockery was lying in the cul-de-sac away from the car. This evidence undermined Appellant's self-defense claim. Thus, we conclude that there was no "reasonable probability that, but for counsel's . . . [error], the result of the proceeding would have been different." *Watson*, 303 Ga. at 762 (2) (d) Accordingly, Appellant cannot show prejudice, and this enumeration of error fails.

(c) Appellant next contends that trial counsel inappropriately allowed Ricardo Harris, the lead investigator in this case, to testify about how he thought the shooting occurred, about the evidence that supported the decision to charge Appellant with murder, and about inconsistencies between the statements of Appellant and his mother, Joyce Sullivan (hereinafter "Joyce"). We conclude that this contention lacks merit.

First, during direct examination, the State played a recording of Appellant's statement to the police for the jury to hear. Harris authenticated this recording. The prosecutor then asked Harris,

11

"[D]id anything about [Appellant's] statement seem inconsistent to you?"  Harris responded "Yes," and went on to explain that the following seemed abnormal:

> When [Appellant] said that they were initially about 2 feet apart and [Dockery] took a step towards him and that left them with less than a foot distance between the two, then [Appellant] says he stepped back, pulled out his gun and shot [Dockery]. When [Appellant] explains the lunge, he says that he took two, three, four . . . steps. It's not possible in less than a foot, unless he's on his tiptoes, to make two, or three or four steps when you're already face-to-face, so we took that as the initial step violated [Appellant's] personal space. He steps back, pulled out his gun, and [Dockery] would have had to have been farther back for him to be able to extend and shoot him.

At the motion for new trial hearing, trial counsel was asked if he considered objecting to this evidence as impermissible evidence of an ultimate issue.  Trial counsel replied:

> Well, I thought the question was what factors went into [Harris's] decision to charge [Appellant].  And so being that [Harris] was the [investigator] that charged him, I thought — there may or may not have been an objection, but I thought it was relevant to go to why [Harris] charged [Appellant].  And I was trying to show that [Harris] made a mistake in not, you know, deciding that he should have charged [Appellant] because [Appellant] was acting in self-defense.

Next, the prosecutor asked Harris at trial, "What factors brought you to charge [Appellant] with murder?" Harris responded:

> Just even with what I just described. The first part was the deceased had no weapon. Neither did [Murray]. There was no weapon found in the car, and the way [Appellant] described the events, it didn't — it didn't mesh with — his whole story just didn't mesh for it to be self-defense.

Trial counsel was asked at the motion for new trial hearing if he considered whether or why an investigator charged a suspect to be relevant to the jury. Trial counsel responded that he did not consider it relevant, but that he thought Harris's testimony went to a charging decision, which is why he opted not to object to its introduction.

Finally, the prosecutor asked Harris at trial, "[D]id you have an opportunity to review the statement of Joyce Sullivan as well?" Harris replied that he did, and the prosecutor then asked, "Were there inconsistencies between [Appellant's] statement and the statement of Joyce Sullivan?" Harris replied, "I can't remember what they were, but there was a few that just didn't add up about

13

how the whole thing played out." At the motion for new trial hearing, trial counsel was asked, "Did you ever consider objecting that, as far as impeachment goes, [Joyce's statement] should have been limited to only the parts that were inconsistent [with Appellant's statement]?" Trial counsel responded:

> I wanted the jury to hear her entire statement because she was very consistent with what she testified to and then what [the State] played in the statement. So as a trial strategy, I wanted [the jury] to hear the consistency of her statement.

Appellant contends that Harris's comments were inadmissible, and trial counsel should have objected but failed to do so because he misunderstood the admissibility of the testimony. Specifically, citing *Teague v. State*, 252 Ga. 534, 536 (1) (314 SE2d 910) (1984), Appellant contends that Harris's reasoning behind his decision to charge Appellant with murder is not relevant.[3]

---

[3] *Teague* was decided under our old Evidence Code, but we have applied the same principle in cases decided under the current Evidence Code. See *Jackson v. State*, 301 Ga. 866, 870 (804 SE2d 367) (2017) ("[A]n investigating officer may not testify about what others told him during his investigation merely under the guise of explaining the officer's conduct." (citation and punctuation omitted)).

14

However, "[Appellant] must show that [counsel's] deficient performance prejudiced the defense." *Strickland*, 466 U. S. at 687 (III). Here, even if trial counsel was constitutionally deficient in failing to object to the admission of Harris's three statements, the length and weight of the statements were unlikely to cause prejudice. Harris's first statement explained the inconsistencies in Appellant's statement, a recording of which had already been played for the jury and authenticated by Harris. Harris's second statement explaining his decision to charge Appellant brought up evidence that had already been elicited through prior testimony. Finally, Harris's third statement regarding inconsistencies between Appellant's statement and Joyce's statement was minor and inconclusive, as Harris stated that he did not remember specifics.

Furthermore, the admission of these statements was not prejudicial in light of the other substantial evidence that had already been presented at trial indicating Appellant's guilt. There were eyewitness accounts from Terry, Murray, and multiple neighbors indicating that Appellant shot Dockery multiple times

15

after their confrontation, including when Dockery was already lying on the ground in the cul-de-sac. Additionally, Appellant was repeatedly confronted on cross-examination with the inconsistencies between his trial testimony and his statements to the police. There is no "reasonable probability that," but for counsel's error in allowing Harris's testimony to be admitted, "the result of the proceeding would have been different." *Watson*, 303 Ga. at 762 (2) (d); see also *Thompson v. State*, 304 Ga. 146, 153 (9) (816 SE2d 646) (2018) (in the context of plain error harm review, detective's testimony that she believed appellant was the shooter likely did not affect outcome of trial, given that the evidence of appellant's guilt was compelling and detective's testimony "would have come as no surprise to the jury"). Accordingly, Appellant failed to demonstrate that his counsel's deficiency, if any, was prejudicial. This enumeration fails.

3. Finally, Appellant argues that the cumulative effect of his trial counsel's errors entitles him to a new trial. See *Schofield v. Holsey*, 281 Ga. 809, 811 (II) n.1 (642 SE2d 56) (2007) ("[I]t is the

16

prejudice arising from counsel's errors that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum." (citation and punctuation omitted)).  Even if trial counsel's errors were harmful, the combined harm was sufficiently outweighed by the strength of the other evidence presented at trial.  The fact that trial counsel failed to establish Dockery's gang affiliation in support of Appellant's self-defense claim was outweighed by the fact that Appellant acted brutally towards Dockery, shooting him multiple times even after Dockery was lying on the ground, as well as shooting Murray, for whom there was no evidence of gang affiliation.  Trial counsel's failure to elicit Copeland's vague testimony was outweighed by the fact that eyewitnesses did not see Dockery with a gun before, during, or after the shooting.  Finally, Harris's testimony created no significant prejudice because his comments were either minor and inconclusive, or presented facts that were already in evidence.  Accordingly, we decline to grant a new trial on the basis of cumulative error.

*Judgment affirmed.  All the Justices concur.*

17

Decided June 21, 2021.

Murder. DeKalb Superior Court. Before Judge Johnson.

*Gerard B. Kleinrock*, for appellant.

*Sherry Boston, District Attorney, Deborah D. Wellborn, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.